### CLAUDE McELROY v. THE STATE.

No. 3400. Decided January 27, 1915.

**1.—Negligent Homicide—Statement of Facts—Information—Practice on Appeal.**

In the absence of a statement of facts and bills of exception, the only ground in the motion for new trial which can be reviewed is the question of the validity of the information, and this being sufficient, a conviction for negligent homicide in the court below must be affirmed.

**2.—Same—Transcript—Unreasonable Delay.**

Where the transcript in a misdemeanor case was not filed in this court until four years and nine months after the trial of the case, the same was an unreasonable delay which should not occur, and officers of the court and attorneys are cited to the plain letter of the law that the transcript in misdemeanor cases must be prepared in preference to civil cases and forwarded to this court without delay.

**3.—Same—Rule of Supreme Court—Statute.**

While the Supreme Court has power to establish rules of procedure of the courts not inconsistent with the laws of the State, such rules must not be in

contravention of a statute or the latter will control.   Following Johnson v. State, 49 Texas Crim. Rep., 429.

**4.—Same—Duty of Clerk—Transcript.**

Rule 116 of the Supreme Court with reference to the delivery of transcript to the attorneys for appellant, when demanded, has no application to tran-scripts in misdemeanor cases, and it is the duty of the clerk under articles 930 and 931, Code of Criminal Procedure, to send the transcript direct to the clerk of this court as soon as completed.   Following Pilot v. State, 38 Texas Crim. Rep., 515.

**5.—Same—Cases Stated—Practice—Penalty—Costs.**

See opinion for state of facts where the delay in filing the transcript was caused by the county clerk in delivering the same to the attorneys for appellant, but there being no intentional dereliction, no penalty other than the costs for the issuance of process and service thereon will be assessed against him; how-ever, officers of the court and attorneys are admonished that such delays in filing of transcript must not occur.

Appeal from the County Court of Childress.   Tried below before the Hon. W. G. Gross.

Appeal from a conviction of negligent homicide; penalty, ninety days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was prosecuted and convicted of negli-gent homicide, and his punishment assessed at ninety days confinement in the county jail.

This cause was tried and judgment entered on the 5th day of April, 1910, and yet the transcript was not filed in this court until January 12, 1915—four years and nine months after the trial of the case, and then filed in obedience to an order of this court made and entered when its attention was first called to the omission to file the transcript on January 6, 1915.

The record contains no bills of exception and no statement of facts, consequently the only ground in the motion for new trial we can review is the one that questions the validity of the information.   The informa-tion properly charges the offense of which appellant was convicted, and the court did not err in so holding, and the judgment is therefore affirmed.

When our attention was called to the fact that more than four years had elapsed since the trial of the case, and no transcript had been filed in this court, and an affidavit being presented stating that a transcript had been made out in May, 1910, and delivered to an attorney of appel-lant, we caused process to issue requiring Mr. Raney, the present county clerk, Judge Freeman, the former county clerk, and Mr. Aynesworth. the attorney to whom it was claimed the transcript was delivered in May, 1910, to appear before this court and show cause why the transcript had

not been filed in this court within ninety days after the trial of said cause, as required by law.

The present county clerk, Mr. Raney, shows that the case was tried some three years before he became county clerk, and that he did not know that the transcript had not been filed in this court until recently. The only negligence that he has been guilty of under the evidence is that he did not promptly make out a transcript in this case and forward same to this court as soon as he learned that a transcript was not on file in this court. He, in a measure, excuses himself by showing that he could not find the papers in the case, and that if a statement of facts was filed he has not yet been able to find same.

Judge Freeman, who was the clerk at the time of the trial, and for three years thereafter, says he made out a transcript and delivered it to Mr. Joe H. Aynesworth, one of the attorneys on the trial of the cause, in May, 1910, and that under rule 116 adopted by the Supreme Court (102 Texas, liii) he thought it was his duty to deliver it to the attorney for appellant in a misdemeanor case. Said rule reads: "The transcript of the record, where defendant has been convicted of a misdemeanor, must be delivered to the party appealing or his counsel, or if not applied for before the twentieth day before the commencement of the term of Court of Criminal Appeals to which the appeal is returnable, the clerk shall transmit the same by mail, paying the postage thereon, to the clerk of the Court of Criminal Appeals." He swears positively he made out the transcript in this case and delivered it to Mr. Aynesworth in May, 1910, and he says he did not know the transcript had not been forwarded to this court by the attorney until in September, 1914, and he then aided Mr. Raney, the present county clerk, to search for the papers, with the intention to aid him in making out a new transcript and forwarding same to this court.

Mr. Joe H. Aynesworth, the attorney to whom Judge Freeman says he delivered the transcript, swears positively the transcript was not delivered to him by Judge Freeman or any other person; that it is true Judge Freeman made out a transcript in May, 1910, but that instead of delivering it to him, Judge Freeman had in fact delivered it to Judge Hathaway, who was appellant's principal attorney on the trial of the case; that he (Aynesworth) was only employed to assist in the trial of the case and had nothing to do with the case on appeal, and that Judge Hathaway alone represented appellant on appeal. That he knows that Judge Hathaway received the transcript, because in July, 1910, Judge Hathaway, in a conversation had with him, had said: "Mr. Freeman had left with him (Hathaway) the transcript in the McElroy case; that it was not his business to send it up and he was not going to do it," and at the time asked him (Aynesworth) not to say anything about it, and he had not done so, until this inquiry arose, when he told Judge Freeman these facts.

J. W. Cochran, sheriff of Childress County, testifies that he had a conversation with Judge Hathaway in the summer of 1912, and he then told him he had not sent the papers up; that it was not his place to do

so, and when he asked whose duty it was, Judge Hathaway replied that it was the duty of the county clerk to send the transcript to the Court of Criminal Appeals. That he reported this conversation to their county clerk, Judge Freeman, and Judge Freeman claimed it was the duty of the attorneys in the case, and they turned and read rule 116 above quoted.

In this examination is the first time this court was informed that it was contended Judge Hathaway had any connection with the matter, and he was not cited to appear, and is not before the court.

This is a brief summary of the testimony heard, and it is seen there is a direct conflict between the testimony of Judge Freeman and Mr. Aynesworth—Judge Freeman swearing that he delivered the transcript to Mr. Aynesworth, and Mr. Aynesworth is equally positive that he did not do so, but delivered it instead to Judge Hathaway. It is thus made clear by all the testimony that Judge Freeman, while county clerk, did in May, 1910, make out a transcript in this case and deliver it to Judge Hathaway or Mr. Aynesworth at that time, believing it to be his duty to do so under rule 116 hereinbefore quoted. He contends that he did not know that rule had been held invalid, and did not know so until so informed by this court on the day of this hearing. Our Constitution provides (sec. 25 of art. 5) "The Supreme Court shall have power to make and establish rules of procedure, not inconsistent with the laws of the State, for the government of said court and the courts of this State." But it has always been the law, that the rules adopted by the Supreme Court, when inconsistent with legislative enactments, must yield to such enactments. (Johnson v. State, 49 Texas Crim. Rep., 429.) And the Legislature has provided in articles 930 and 931: "The clerk shall prepare transcripts in felony cases that have been appealed in preference to cases of misdemeanor, and shall prepare transcripts in all criminal cases appealed in preference to civil cases. As soon as the transcript is prepared, the *clerk shall forward the same by mail or other safe conveyance,* charges paid, enclosed in an envelope, securely sealed, directed to the clerk of the Court of Criminal Appeals."

Such is the plain provisions of the Code of Criminal Procedure, and it is made the duty of the clerk to send the transcript direct to the clerk of this court as soon as completed, and rule 116 relied on by the clerk is invalid, because inconsistent with the law enacted by the Legislature. In the case of Pilot v. State, 38 Texas Crim. Rep., 515, the transcript was stricken from the docket, it being held that "a transcript which by its endorsements shows it was delivered to appellant's attorney and through them found its way into this court, will be stricken from the docket, as it did not come into this court through the proper channel." Thus it is seen Judge Freeman when county clerk, acted improperly in delivering the transcript to the attorneys for appellant, or either of them, and he had no right to rely on them to send the transcript to this court, and the fact that he did so is the cause of the delay in filing the transcript in this cause. But we are impressed that Judge Freeman

was sincere in his belief that it was his duty to deliver the transcript to the attorneys for appellant, when demanded, and he was led into such misconception of the law by rule 116, and under such circumstances we do not think he has intentionally done any wrong, and as the intent with which a person does an act should always be taken into consideration, we do not feel justified in assessing against him any penalty other than the cost of the issuance of process and service herein.  But all clerks will take notice that rule 116 is not a valid rule, being in conflict with the statutes, and it is their duty to send the transcript in each and every case direct to the clerk of this court as soon as it is completed, and we hope no such delay as is apparent in this case will again occur.

The memory of man is frail, and we by the testimony are satisfied that Judge Freeman is sincere in testifying that he delivered the transcript to Mr. Aynesworth; we are likewise satisfied that Mr. Aynesworth is likewise sincere in testifying that he did not do so, but delivered it instead to Judge Hathaway.  More than four years have elapsed, but in either event it was not the duty, under the law, for either Judge Hathaway or Mr. Aynesworth to forward the transcript to this court and see that it was filed.  That is the rule in civil cases but not in criminal cases, because in all criminal cases the law puts this duty on the clerk.  Mr. Aynesworth frankly admits that he perhaps acted improperly when told by Judge Hathaway that he had the record and was not going to send it up, in keeping quiet about the matter until in September, 1914, at the request of the judge.  While his connection with the case had ceased at that time, yet the record shows he was one of the attorneys on the trial of the case, and this apparent acquiescence in keeping the record from this court for several years, is perhaps slightly censurable, yet we can understand how a man who is made the recipient of a confidence is loath to tell what he has been told, and were it not for his connection with the trial of the case, no one could or would blame him.

As to Judge Hathaway, as before stated, he is not before the court, he not having been cited to appear.  He was not here to testify as was Judge Freeman and Mr. Aynesworth.  Not having been cited, we have no jurisdiction to assess against him any punishment if we desired to do so, and it would be highly improper to do so when he has not been given a hearing.  It would not be improper to add that we are informed he denies having the transcript.  This much is said in justice to him, as the testimony of the others is given.

This is one of those unfortunate instances wherein it is difficult to determine the real facts.  All those who appeared before us impressed us that they were swearing to what they believed to be the truth, the whole truth and nothing but the truth, and while there is a conflict in the testimony, yet we do not think either of the gentlemen intentionally make any misstatement, but on account of the great lapse of time, one or the other is honestly mistaken.  But be that as it may, such an instance as this is the reason for the great clamor for a change in criminal

procedure, when there is no need for so great a change, but a more implicit compliance with the law as it is written. If so, there would be no such great delay as is here manifest, and we hope that it will not occur again.

*Affirmed.*