## HENRY PILOT v. THE STATE.

### No. 1433. Decided December 1. 1897.

### Opinion on the Merits Decided January 12, 1898.

**1. Transcript on Appeal—How Forwarded—Practice.**

Code of Criminal Procedure, article 897, provides, "As soon as the transcript is prepared the clerk shall forward the same by mail, or other safe conveyance, charges paid, inclosed in an envelope securely sealed, directed to the proper clerk of the Court of Criminal Appeals," and the Rules of the Supreme Court for the District Courts require the clerks to send transcripts in felony cases by mail. Held, a transcript which, by its indorsements, shows it was delivered to appellant's attorneys, and through them found its way into the Court of Criminal Appeals, will be stricken from the docket, and a certiorari ordered to the clerk of the district court to make out a new transcript and forward the same according to law.

**2. Burglary—Continuance.**

On a trial for burglary an application for continuance, when considered on motion for new trial was held properly overruled where it appeared that it was proposed to prove by the absent witness that a few days prior to the burglary he, witness, had repaired a rifle gun for defendant, the other testimony adduced showing that the gun defendant had attempted to use at the time of the burglary was a shotgun and not a rifle.

**3. Same—Alibi.**

An application for continuance to prove an alibi should be so definite as to its statement of the facts as would manifest at least the witness' opportunities to be able to testify as to the alibi.

**4. Alibi—Rebutting Evidence.**

Original testimony may be introduced which directly rebuts defendant's theory and testimony as to an alibi.

**5. Burglary—Expert Evidence.**

On a trial for burglary, where the State's witnesses had testified that a brother of defendant was shot in the burglarized house, his dead body having been found next morning in a gully some eighteen feet in the rear of the house, it was competent for a physician who had examined the wounds upon his body and the clothing he was wearing to state that in his (the expert's) opinion it was possible for deceased, after he had been shot in the house as testified, to have gotten to the gully without leaving any sign of blood along the route.

**6. Same—Evidence of Other Similar Crimes—Charge of Court.**

On a trial for burglary where evidence was admitted without objections, to the effect that the same house had been previously burglarized, and which evidence the State introduced for the purpose of explaining the presence of the prosecutor and others as watchers in the house; Held, a charge of the court which omitted to limit and restrict such evidence would not be revised where no exception for the omission had been reserved by the defendant to the charge; and especially where such evidence of the previous burglaries did not tend in the remotest degree to implicate any particular person.

**7. Same—Proof of Intent.**

On a trial where defendant was indicted for burglary with intent to commit theft, and his contention was that the intent established by the evidence was an assault to commit murder, and not an intent to commit theft; Held, the fact that defendant's confederate (his brother) carried with him a pillow-slip which was left in the storehouse after the brother had been shot, and fled, and that before the burglary the parties had been seen prowling around the house, sufficiently established that their intent and purpose was to steal from the store.

**8.  New Trial—Misconduct of Jury.**

It is no ground for a new trial that one of the jurors makes affidavit to the effect, that after he expressed his belief that defendant was not guilty, he was induced to assent to the verdict because he believed he would be grossly insulted by the others if he did not do so.

APPEAL from the District Court of Shelby.  Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction for burglary; penalty, two years imprisonment in the penitentiary.

The burglarized house was situated in East Hamilton, a village in Shelby County, and was used by R. R. Wiggins, the alleged owner, as a wareroom in which he stored corn meal, meat, flour, plow tools, etc.  The house had been entered previously and meat and other things taken from it.

On the night of May 12, 1897, R. R. Wiggins and C. L. Johnson went into the house about dark to remain all night and watch the premises and to try and find out and arrest the burglars.  They had their guns with them, and after remaining there for some time they spread a pallet down and went to sleep.  At a late hour in the night they were awakened by a noise at the east door of the house; and in a short time, some fifteen or twenty minutes, the door was unfastened and two parties entered the building and came up to about the center of the room, where Wiggins and Johnson were waiting for them with their guns in hand.  Johnson struck a match and quickly lit a lamp which they had brought with them, and the parties saw the defendant and his brother, Hamby Pilot, at a lard barrel.  Wiggins hallooed to the parties to hold their hands up, when he says the defendant raised his gun, and the gun snapped at them.  Wiggins fired his gun, and as the parties fled from the door Johnson also fired upon them.  There was a gully about eighteen feet from the rear of the house into which the parties jumped after they had made their escape, and in a few moments Wiggins said he heard the voice of Hamby Pilot down in the gully saying, "I surrender, gentlemen!  I surrender!"  It being dark, and knowing that the burglars were armed, they did not approach the gully, but sent off Wiggins' son to a camp, 200 yards distant, of some parties who were making barrel staves, for the purpose of getting dogs with which to trail the burglars.  The next morning, after daylight, the dead body of Hamby Pilot was found in the gully.  And a pillowslip, which Hamby Pilot had been carrying the evening before, was picked up inside the burglarized building.  At the inquest which was held over the dead body of Hamby Pilot it was found that his leg had been terribly shattered by buckshot; and the physician who made the examination testified that he had died from the effects of the wound.  No blood was found in the warehouse or upon the trail leading from the door of the house to the gully.  The physician stated it as his opinion, that the party could have been shot inside the house and have gone the distance to the gully without leaving any signs of blood on the trail, considering the character of clothing he had on the wounded leg.  And, in the opinion of

the physician, the deceased might have broken his leg, after the bone of the leg was fractured, as he sprang from the building to the ground—a distance of about four feet high. Wiggins and Johnson were arrested for the murder of Hamby Pilot, and were afterwards indicted, tried, and acquitted for that murder, before the defendant in this case was tried for the burglary.

The theory of the defense in this case was that the house had not been burglarized at all, and that the deceased, Hamby Pilot, had been shot by Wiggins or Johnson outside the house. Another defense for this defendant was alibi, and that if Hamby Pilot had committed the burglary this defendant was not there acting with him. Defendant proved that he and his brother had had a personal difficulty, and had nothing to do with each other for some time prior to his brother's death. Defendant also proved good character for honesty in the community in which he lived.

*D. M. Short & Sons*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of a felony, and appeals.

The transcript bears this indorsement: "Applied for by D. M. Short & Sons, attorneys for appellant, on the 16th day of August, 1897, and delivered to D. M. Short & Sons on the 6th day of September, 1897.
[Signed]                    "J. T. JONES,
"Clerk District Court Shelby County."

We understand by this that the transcript was delivered to the attorneys for appellant, and found its way into this court through said attorneys. Article 897, Code of Criminal Procedure 1895, provides: "As soon as the transcript is prepared the clerk shall forward the same by mail, or other safe conveyance, charges paid, inclosed in an envelope securely sealed, directed to the proper clerk of the Court of Criminal Appeals." In connection with this article, the rule prescribed by the Supreme Court for district courts requires the clerks to send transcripts by mail, in felony cases, postpaid, to the clerk of the Court of Criminal Appeals, to the branch at which the case is returnable, etc. And see Lockwood v. State, 1 Texas Crim. App., 749. We accordingly hold that said transcript does not come into this court through the proper channel provided by law. Moreover, on an inspection of the record, we find an agreement between the parties to correct the transcript; showing, evidently, that the record is not properly prepared.

It is accordingly ordered that the transcript in this case be stricken out, and a certiorari is ordered to the clerk, to prepare and forward a new and complete transcript of said case to this court, in the mode provided by law.

*Certiorari ordered.*

## OPINION ON THE MERITS.

HENDERSON, JUDGE.—Appellant was convicted of burglary, and his punishment assessed at two years in the penitentiary; hence this appeal.

Appellant complains of the action of the court in overruling his motion for a continuance on account of the absence of two witnesses, Grant Pilot and one Amey, both of whom, he says, had been subpoenaed as witnesses for him in the case. By the witness Amey he proposed to prove that, a few days before the alleged burglary, said Amey, who was a gunsmith, had repaired the gun of appellant. It was insisted that this testimony was material in rebuttal of the State's proof that, in connection with the two parties (defendant being one of them) who were seen by the two State's witnesses in the act of burglarizing the house, defendant had a shotgun, and snapped it at the State's witnesses. Now, in response to this position, it is only necessary to state that the proof offered by the State did not show that it was the shotgun of the defendant which was used. Indeed, when we recur to the testimony on the part of the State, the witness states he was not certain whether it was a shotgun or not. So far as the State's case is concerned, if appellant had a shotgun it is not claimed that it was his own shotgun, and we fail to see how the bare circumstance that he had his rifle repaired a few days before by the gunsmith would have had any material bearing on the case. As to the witness Grant Pilot, the application states, in general terms, that Grant, the son of appellant, was at home on the night the burglary was committed. The circumstances attending this alibi testimony are not stated. The burglary occurred about 12 o'clock at night, at a little town about four miles from the defendant's house. How many rooms were in said house, whether Grant slept in the same room with appellant, or whether it is pretended that he was awake during the night, and knew that appellant was at home, is not stated. This application is not such a definite statement of facts as would authorize us to entertain the motion in this regard. The motion for a continuance, as well as the motion for a new trial, predicated on the action of the court in overruling the same, was properly overruled.

It is claimed by appellant that the court erred in permitting the State to introduce C. L. Johnson, after the defendant had closed his testimony, in rebuttal; the insistence being that the testimony of the said Johnson was original testimony, and not in rebuttal of anything that defendant proved, and should have been introduced originally by the State. It is true the testimony of Johnson was original testimony, and might very properly have been introduced by the State originally, but it was also directly in rebuttal of the defendant's theory of an alibi. His testimony tended to show that he was at another and different place at the time of the burglary. This was testimony directly in rebuttal of the fact that he was not at the place of the burglary, and, even if it had not been, under the circumstance of this case, its admission would not have been reversible error.

Appellant's third assignment of error is based on the action of the court in allowing Dr. H. M. Reeves to state that he was a physician, etc., and that on the next morning after the killing of Hamby Pilot, the brother of the defendant, he saw his dead body, and found a wound on the left side of his leg, just below the knee, the result of a gun shot. The bones had been fractured in three places, and the muscles and artery had been severed. This leg was covered by heavy drawers and pants, and the sock was drawn up over the drawers. The testimony, in connection with this, showed that said Hamby Pilot was shot in the burglarized house about 12 o'clock, and that his dead body was found the next morning about eighteen feet in the rear of the store, in a gully. Dr. Reeves was permitted to testify, on these facts, that it was possible for the deceased to have been shot in the house, as related, and to have gotten to the gully, eighteen feet in the rear of the store, and left no sign of blood along the route. We think this testimony comes within the rule of expert testimony. But, if it be conceded that it does not, we fail to see how it could have affected appellant. The witnesses for the State swear positively to the shooting of Hamby Pilot in the house, and all the testimony shows that he was found about eighteen feet in the rear of the house, in a gully, on the next morning. And this evidence is not gainsaid by any testimony for the defendant. However, whether he spilled any blood along the route we think is immaterial. The testimony tended to show that no blood was found along the route, and we are not informed as to the nature of the ground or what had been done to obliterate appearances. His clothes in the interim may have absorbed the blood. At any rate, it was competent to show that in his condition, as testified to by the surgeon, it was not an impossible feat for him to travel that distance without having left any trace of blood.

The fourth assignment of error relates to the charge of the court; and it is insisted that the court, in its charge as to how the jury were to weigh the testimony and reconcile any conflicts in the testimony of the witnesses, failed to obliterate the words, "interest in the case," in the printed charge, which has heretofore been held to be a charge upon the weight of testimony. An examination of the charge, however, shows that this clause was effectually eliminated.

Appellant insists that the court should have instructed the jury with reference to certain portions of the testimony relating to former burglaries of the house, introduced by the State; that is, that the jury should have been instructed with reference to the purpose for which they could consider such testimony. This charge was not excepted to at the time. The evidence in regard to other burglaries having been committed in the same house, prior to this instance, was admitted for the purpose of explaining the presence of prosecutor and Johnson in the house that night; that is, that they were there watching for the burglars. The evidence in regard to the other burglaries did not tend in the remotest degree to implicate any particular person. It was not objected to at the time. Under this state of facts, the only objection that appellant could

urge would be that the jury may have convicted him of the other burglaries. This was not at all probable, because, as aforesaid, the evidence pointed to no particular individual. • Again, it could not have prejudiced appellant, because the punishment was the lowest fixed by law.

There is nothing in appellant's contention that proof as to the intent with which the burglary may have been committed was wanting—that is, that it was rendered uncertain whether, in making the entry, appellant and his confederate did so for the purpose of theft or of an assault with intent to murder; and it is urged that because appellant, as soon as detected, attempted to shoot the parties who were lying in wait in the store, is strong evidence that the entry was for that purpose. The evidence presents no pretext that these parties knew that the prosecutor and the witness Johnson were in the store at that time, or that they had any malice or grudge against them. The evidence, however, does strongly tend to show that the entry was made for the purpose of theft. Hamby Pilot, brother of appellant, carried with him a pillowslip, which was found in the house after he was shot, and fled with his codefendant, appellant. They were prowling around the store, and could have had no other purpose, as indicated by the testimony in this case, than to steal from said store.

It is also insisted that a new trial should have been granted because of the misconduct of the jury. The juror Allen Alford makes an affidavit, in which he states that he did not believe the defendant guilty, "but assented to the verdict in the case because eleven of said jurors stated to me that they believed the defendant was guilty, and when I stated to them that I did not believe, from the evidence, that he was guilty, their conduct was such towards me that I believed unless I assented to the verdict which was returned I would be grossly insulted by them, and that I only assented thereto by reason of the influence of this fear." This is the language of the juror. No authority can be found for setting aside a verdict on the ground here urged. If appellant had moved to set aside the verdict on the ground that one of the jurors was not competent, for the want of capacity to serve as such, and in support of this motion introduced this affidavit, the question would have demanded more consideration. However, we would state that no fact of coercion or undue influence is stated to have been used against said juror, and the contention of appellant is without any merit.

Appellant insists that, in the face of his alibi testimony, in connection with the weakness of the State's case, he ought to have a new trial, and that this case should be reversed. We have examined the record carefully, and it occurs to us that the State's case is directly supported by the positive testimony of two eyewitnesses, and the surrounding facts strongly corroborate their evidence. The judgment is affirmed.

*Affirmed*

[NOTE.—Appellant's motion and amended motion for rehearing were overruled without a written opinion.—Reporter.]