ARTHUR MORGAN v. THE STATE.

No. 1150. Decided April 26, 1911.

**1.—Theft—Case Stated—Insufficiency of Evidence.**

See opinion which seriously doubts that the evidence makes a case against the defendant for theft.

**2.—Same—Evidence—Charge of Court—Other Offenses.**

Where, upon trial of theft, defendant was not found in possession of the alleged stolen property, testimony as to goods found in the possession of a third party was inadmissible; defendant not having been connected therewith; especially where the court charged the jury with reference to other thefts.

**3.—Same—Evidence—Opinion of Witness—Hearsay.**

Upon trial of theft testimony with reference to the opinion of witness as to the possession of a third party of the alleged stolen goods and other goods was inadmissible, it not having been shown that defendant was connected therewith.

**4.—Same—Opinion of Witness—Hearsay.**

Upon trial of theft, testimony as to the opinion of witnesses with reference as to how certain goods got into the possession of a third party with which defendant was not shown to have been connected was inadmissible.

**5.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**
 Where, upon trial of theft, during the argument of defendant's counsel, the county attorney interrupted him by saying that the defendant had not testified in his own behalf, etc., there was reversible error.

Appeal from the County Court of Dallas County at Law.   Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of misdemeanor theft; penalty, a fine of $25 and six months confinement in the county jail.

The opinion states the case.

*Crawford, Muse & Allen,* for appellant.—On question of argument of counsel in alluding to defendant's failure to testify:   Hunt v. State, 28 Texas Crim. App., 149; Reed v. State, 29 Texas Crim. Rep., 449; Jordan v. State, 29 Texas Crim. App., 595; Wilkins v. State, 33 Texas Crim. Rep., 320.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with the theft of one skirt of the value of $15.   The trial resulted in conviction, the punishment being assessed at six months imprisonment in the county jail, and a fine of $25.

The State proved by the witness Booker that he and appellant were employes of the Titche-Goettinger Company, the witness being employed to run the elevator, and appellant porter on the second floor. On the morning of the 8th of September, while dusting out his elevator, he saw appellant take a black skirt and carry it into the toilet. This is the only time appellant was ever seen in possession of goods taken from his alleged employers.   Booker did not know what became of the skirt, or that it was ever taken from the house.   The latter part of December, or, as the witness states, just before Christmas, the house of Emma Anderson was investigated and quite a lot of goods found in her possession, among others, a black skirt.   It had some mark on it indicating it had at one time been in the possession of the Titche-Goettinger Company.   There were some other things, amounting, as one of the witnesses state, to a few hundred dollars, found in Emma Anderson's house.   No witness undertook to put appellant in possession of these goods.   The State showed that appellant spent part of his time with this woman, and evidence was introduced to indicate or establish the fact that he was keeping the woman as his mistress.   He was seen there on divers occasions.   The witness Duncan, a policeman, testified that appellant had two homes, one his residence on Flora Street, and the other with the woman Emma Anderson.   But when brought down squarely on the facts his evidence were matters of opinion and hearsay.   The witness Booker testified that appellant stayed with the woman Emma Anderson, at least he had seen him there on divers occasions.   He also testified

that appellant's home was on Flora Street. Booker was first arrested for the theft of these goods, and the officers took him to Emma Anderson's residence, and from the evidence it would seem in search of the missing skirt. Booker also testified that appellant told him he was going to steal some goods. Emma Anderson did not testify in the case. No explanation is given in the record why she was not placed upon the stand as a witness. The witness Booker testified he was at Emma Anderson's house quite often himself. Appellant did not testify. It may be more than questionable, and seriously so, that the evidence makes a case against appellant. Omitting Booker's testimony, there is not a fact in the case that we have been able to discover that connects appellant with the theft, and that is found in the statement of Booker that he saw appellant take a skirt from a pile of skirts one morning and carry it into the toilet. There is no evidence offered or suggested that the skirt found at Emma Anderson's was the skirt that appellant had in his possession that morning, unless it be found in the fact there was some mark about the skirt which indicated that it may have been once the property of Titche-Goettinger Company; but there is no evidence in the record attempting to show that the skirt found at Emma Anderson's was the skirt appellant had in the building. Nor is there any evidence in the record that we have been able to discover to show appellant ever had possession of any of the other goods that were found at Emma Anderson's.

1. Exception was reserved by appellant to the introduction of evidence in regard to the goods and things found at Emma Anderson's house. We do not care to review the various grounds of objection. As this record presents the matter, we are of opinion that these matters were not admissible, and this becomes the more important by reason of the fact the court instructed the jury with reference to other thefts, on the theory, it is presumed, that appellant was engaged in systematic stealing from his employers.

2. Exception was reserved to this charge also on several grounds. It may be sufficient, in holding this charge reversible error, to state that appellant was not in anywise connected with the goods with reference to which the charge was given, and the court in giving the charge necessarily assumed the fact that appellant had had the goods in his possession. Emma Anderson's possession of the goods was not possession of appellant, and unless in some manner they could connect appellant with the goods found at Emma Anderson's house, the testimony was clearly inadmissible, and the charge was equally clearly erroneous.

3. The policeman Duncan was permitted to testify at considerable length with reference to his opinion about the matters. Among other things, in substance, he states appellant took these goods and carried them to Emma Anderson's house. He says he is bound to have carried them there. There is quite a lot of this testimony introduced

from this witness, over appellant's objection, that ought not to have gone into the record. They are matters about which Duncan knew nothing, and was only expressing his belief or opinion about things and about which he · admitted that he really did not know anything. This was error.

4. The remarks with reference to Duncan's testimony, we think, equally applies to some of the testimony of the witness Cahn with reference to the goods that he says he assisted in finding at the residence of Emma Anderson. He was with Booker and Duncan when they went to the residence of the woman Anderson. We deem it unnecessary to give a detailed statement of the testimony of these witnesses. It was hearsay and opinion evidence about matters occurring in the absence of defendant, and opinions based on finding the goods at Emma Anderson's house, and all these matters occurred in the absence of appellant, and, of course, are in no way binding upon him. They were matters occurring between third parties.

5. Another bill of exception recites that Duncan testified on cross-examination that he had never known of any other instance in which defendant was charged with violating the law; and it is further stated in the bill that appellant did not take the witness stand in his own behalf, and that during the argument of the case appellant's counsel, R. B. Allen, directed the attention of the jury to the fact that he had asked the State's witness, Duncan, the detective, whether or not he had ever heard of the defendant being charged with any violation of the law outside of the transaction for which he was on trial, and Duncan answered that he had not. Defendant's counsel then said to the jury that if the defendant had not had a clean record he would not have dared to ask the State's witness this question, because the assistant county attorney, Mr. McCutcheon, could have then proved against the defendant any violation of the law on his part, if there was any, and his arrest for said offenses; and thereupon the assistant county attorney, in the presence and hearing of the jury, interrupted counsel for the defendant in his argument and said: "I could not have proven anything of that kind against him, because the defendant did not testify as a witness in his own behalf." Objection was immediately interposed that it was an allusion to appellant's failure to testify in his own behalf, which is prohibited by the statute. This was error. Appellant had not testified in his own behalf, and this was a direct allusion to such failure to testify. Under all of our authorities and under the statute itself this constitutes grounds for reversal.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*