### J. WOOL v. THE STATE.

No. 4547.    Decided March 6, 1918.

**1.—Receiving Stolen Property—Other Offenses—Co-conspirator—Evidence.**

Where, upon trial of receiving stolen property, the evidence showed that the stolen property taken from several houses burglarized about the same time was received by the defendant and that the State relied upon circumstantial evidence to show criminal intent, there was no error in admitting testimony with reference to other burglaries than the one upon which the prosecutilon was based. The same, however, should have been limited and not extended to transactions in which the possession of the stolen property by the State's witness connected him alone with the particular collateral crime, and his statements after the

termination of his connection with defendant were not admissible. Prendergast, Judge, dissenting.

### 2.—Same—Evidence—Knowledge—Guilty Intent.

Where. upon trial of receiving stolen property. the evidence raised the issue whether defendant knew at the time of receiving the alleged stolen property that it was stolen, a charge on that subject should have been submitted. Prendergast, Judge, dissenting.

Appeal from the District Court of Wichita. Tried below before the Hon. Edgar Scurry.

Appeal from a conviction of receiving stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Martin & O'Neal,* for appellant.—On question of other offenses: Denton v. State, 60 S. W. Rep., 670, and cases cited in Wool v. State, recently decided.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, Judge.—Appellant was convicted of receiving stolen property. This is a companion case to No. 4546 and the facts, while not identical, are so similar as to make, I think, the same principles with reference to introduction of proof of other acts applicable to each.

In this case there is no definite proof as to the identity of the thief. There is evidence, however, that the stolen property taken from several houses burglarized were received by appellant at the same time; that there were previous negotiations with reference to it with unknown parties, and the State relying upon circumstantial evidence to show criminal intent, was, we think, entitled to prove the burglaries with reference to those transactions in which the stolen property was identified in the possession of appellant. Such evidence, I think, however, should be limited to such transactions and not extended to evidence of transactions in which the possession of the stolen property by the witness Mike Levine tended to connect him alone with the particular collateral crime. The statements and transactions of Mike Levine after the termination of his connection with appellant were not admissible against appellant. As they were not made at a time when the evidence discloses that appellant and Levine were acting together, their subsequent acts in the nature of a confession by Levine is not binding upon appellant.

The State's testimony given by the accomplice, Mike Levine, to the effect that appellant bought the stolen goods is quite confusing and contradictory. He states in one place, "I didn't know whether it was stolen goods or not." He claims that appellant told him he bought the goods and I think the issue of purchase without knowledge of the theft was raised. These facts present a defensive theory, which on request of appellant should have been submitted to the jury. It was not

submitted and the appellant ·in a charge couched in appropriate language requested the court to tell the jury that the receipt of the goods by appellant alone was not sufficient to convict, that it must be accompanied by proof that he knew they were stolen. Knowledge of the fact that the goods were stolen is an essential element of the offense and the State's testimony tending to suggest that they were purchased without guilty knowledge or intent, a charge on the subject should have been given. Cases will be found listed in Branch's Ann. P. C., pp. 1365-1367.

The judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—This is a companion case to No. 4546 against the same appellant, this day decided, and is applicable to the latter.

On February 23, 1917, the grand jury of Wichita County returned an indictment against appellant for unlawfully and fraudulently receiving from a person to the grand jurors unknown sixty-eight pairs of men's pants of the value of $5 per pair, thirty-one suits of men's clothes of the value of $15 per suit, seventy yards of silk goods of the value of $1 per yard, and one lady's coat suit at value of $20, the property of C. A. and W. J. Galbraith, which said property had been theretofore acquired by another so that the acquisition thereof was theft, and that appellant then and there received and concealed it knowing it to have been so acquired.

The indictment followed the statute and the approved forms therefor. There was no complaint of its insufficiency in any particular. Appellant was convicted and his punishment assessed at the lowest prescribed by law.

Mr. C. A. Galbraith, one of the alleged owners of the stolen goods, testified that he and his father, the other alleged owner, in August, 1916, were engaged in the dry goods business at Kirkland, Texas; that on the night of August 28, 1916, their store building was burglarized and about thirty suits of clothes, between sixty and seventy pairs of men's pants, one lady's coat, and other property, was at the time stolen from said store; that on January 6th, following, he found in appellant's possession and store in Wichita Falls twelve pairs of pants and three coats of said stolen property; that later he found some other of his said stolen property in Fort Worth, Dallas, and Paris, Texas. These goods, recovered from these other places, were brought from there to Wichita Falls and were in the sheriff's office and in the courtroom while the case was being tried, and he identified these goods as those stolen from him and his father. He testified to the value of the goods stolen and those he recovered, which showed that they were of a much greater value than $50. There was no question raised as to the prop-

erty being worth less than $50. Nor was there any question of the sufficiency of the evidence to show that he positively identified the goods which were recovered as his. Some of the cards were on some of them, but torn off of others.

It was proven by other witnesses that for some time prior to March or April, 1916, Mike Levine had been in the business of dealing in second-hand clothing in Wichita Falls; that about that date appellant bought a half interest from Levine in that business and went into partnership with him, but that after he and Levine were in partnership some seven or eight months they fell out and dissolved partnership.

Mr. Dwight, the sheriff of Childress County, testified that he knew appellant and Levine; on January 6, 1917, he went to Wool's said place of business in Wichita Falls with the witness Galbraith looking for Galbraith's stolen goods. He testified also that he and Mr. Galbraith, at the time, found in appellant's store the amount of said stolen goods which Mr. Galbraith identified.

Mr. W. W. Viles testified in substance that he had been engaged in the dry goods business at Burkburnett, Texas; that his store was burglarized October 25, 1916, and there was stolen from him at the time 400 pairs of men's shoes, eighty-four men's suits, twelve pairs of boys' suits, six or eight pairs of ladies' shoes, and other property unnecessary to mention; and that he found some of his goods in appellant's store in Wichita Falls and he recovered some other of his property from Fort Worth, Dallas, and Denison.

Mr. Kincade, Mr. Viles' clerk, and later his partner in said business, testified substantially to the same thing.

A. Levine, who lived in Dallas, testified that on January 30, 1917, he bought from Mike Levine fifty-six pairs of shoes and seventeen suits, paying $226.25 for the whole, and that he sold these goods to K. Wolf, on which he made a profit.

Said K. Wolf testified that he bought said goods from A. Levine in Dallas on the same date that A. Levine bought them from Mike Levine; that later the sheriff of Wichita County and a Fort Worth detective, with said Mr. Kincade, came to his place in Dallas and got the goods he had so bought; that that was the stuff that came from Mr. Viles' store at Burkburnett.

Mr. Maloney testified in substance that he lived in Goree, in Knox County, and had been engaged in the mercantile business there; that on August 18, 1916, his store was burglarized and at the time suits, hats, raincoats, silks and gloves were stolen therefrom; that later he identified and recovered from Mike Levine's store in Paris some of his said stolen goods.

Mr. Hawkins testified he was along when they got some of said stolen goods from Fort Worth, Dallas, Sherman and Denison.

The state introduced Mike Levine, who testified in substance that he had been in the business of dealing in second-hand clothing for some

time before he formed partnership with appellant and had a stock worth about $550 at the time he formed the partnership with appellant; that he formed the partnership, and was in business with him about a year or more; that appellant did not pay him any money in entering the partnership but was to furnish an amount with which to buy other goods to the same amount as his stock was worth; that after they had been in business for some time that they fell out and dissolved; that Wool kept the store and part of the stock therein and turned over to him, Levine, certain goods that were then in the store. He testified that he, himself, did not buy any of said stolen goods but that Wool bought them himself; that the first time he ever saw them they were in their store in a box; that when Wool turned them over to him, after the dissolution of the business, he first took them to his house, and later took some of them to Dallas, Fort Worth and Paris, and that he sold to A. Levine the goods that Levine testified he bought from him. In other words, by his testimony he showed that he did not buy any of said stolen goods but that appellant bought them, and that in the dissolution appellant turned them over to him and that the stolen goods that were procured by the respective owners at Fort Worth, Dallas, Paris, Denison, and Sherman were the goods that he got from Wool and took to some of the other of those places and sold them out. He said appellant did not tell him what he paid for the goods and that he did not ask him, and that he did not know where they came from. He was subjected to a long and severe cross-examination and the appellant introduced testimony which had the effect of tending to impeach him in several particulars; but all this was for the jury.

I have not given the testimony of any of the witnesses in detail, merely a brief outline of the substance and conclusion to be drawn from the whole evidence of the witnesses stated.

Appellant has one bill showing that he objected to the testimony of Kincade wherein he testified to the burglary of the Viles store and the theft of the goods therefrom on October 25th and the finding of them in appellant's store and possession; and another bill objecting to the testimony of Viles to the same effect. He has another bill objecting to the testimony of Maloney and others as to the burglary and theft of the property from Maloney, which was also found in appellant's store and possession. He has other bills objecting to the testimony of Wolf, A. Levine and of Hawkins by which these stolen goods were traced from appellant's store and possession through Mike Levine to the parties to whom some of them were sold. Appellant's contention is that all this testimony was inadmissible because it proved other offenses which he claims was inadmissible in the case against him. All of this testimony was admissible under the circumstances of this case and the court did not err in admitting it over appellant's objections.

In describing the offense of receiving or concealing stolen property the statute, itself, makes it requisite to show that the accused knew at the time he received or concealed it that it had been stolen. Therefore

knowledge by the accused that the property had been stolen is one of the necessary elements of the offense. Ordinarily, in most offenses proof of the commission of other crimes is not admissible, but all of the text-book writers and cases hold that when it becomes necessary to prove scienter, or guilty knowledge, that the evidence of other crimes committed along about the same time, whether before or after the one charged against an accused, is admissible. Mr. Wharton, one of the ablest law writers in this country, volume 1, section 31, in his work on Criminal Evidence, expressly holds that proof of such other crimes is admissible to prove scienter, or guilty knowledge, and to prove intent and to prove system. In section 35 he says: "Evidence of collateral offenses often becomes relevant where it is necessary to prove scienter, or guilty knowledge, even though the reception of such evidence might establish a different and independent offense. In prosecutions for receiving stolen goods, guilty knowledge is the gist or substance of the offense to be established by the prosecution; and evidence of collateral offenses is admissible to establish such knowledge." In section 39 he says: "When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and for such system, identity or intent can often be shown. The question is one of induction, and the larger number of consistent facts the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system. In order to prove purpose and design, evidence of system is relevant; and in order to prove system, collateral and isolated offenses are admissible from which system may be inferred."

This court has uniformly held that such evidence in cases of this character is admissible. No case holds to the contrary. Kaufman v. State, 70 Texas Crim. Rep., 438, and authorities cited; Gray v. State, 77 Texas Crim. Rep., 221, and authorities there cited. This principle is so well settled we regard it as unnecessary to cite other authorities or discuss the matter further.

Appellant objected to the court's charge because it omitted to tell the jury, in substance, that if appellant received or concealed said stolen property, that they must believe "that he received the same with the fraudulent intent of appropriating it to his own use and benefit and with the intent of depriving the owner of the value thereof before they can convict"; and he complained in the same connection of the court's refusal to give his specially requested charge embodying the above as a requisite to his conviction. In this offense it is not necessary to make any such allegation in the indictment or to make any such proof as has uniformly been held by this court. Nourse v. State, 2 Texas Crim. App., 304; Brothers v. State, 22 Texas Crim. Rep., 447. For other cases see Judge Willson's Texas Crim. Forms for indictment, p. 351.

That Levine said appellant told him he bought the stolen goods does not present any defensive theory whatever. Buying stolen goods is known of all men as the choice way of *receiving* them. That is what the thief steals them for—to sell to someone who thereby receives or conceals them. The evidence clearly establishes appellant's guilt.

· By every principle of law and justice this case should be affirmed.
I dissent to its reversal.