## W. R. CARMEAN V. STATE

No. 28,130. April 11, 1956.
State's Motion for Rehearing Overruled
May 16, 1956.

*Sharpe, Cunningham & Garza,* by *Paul Y. Cunningham,* of Counsel, Brownsville, for appellant.

*F. T. Graham,* Criminal District Attorney, Brownsville, *Darrel B. Hester,* Assistant Criminal District Attorney, Harlingen, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

Appellant was convicted for the offense of burglary and his punishment assessed at two years in the penitentiary.

The state's testimony shows that the appellant leased his building to the complaining witnesses who were engaged in the radio and television business, retained a small building at the rear of said leased building where he operated a radio repair business and also retained a key to the leased building with the right to use the rest room. On May 1, 1955, appellant sold said building to the complaining witnesses under a contract of sale with a deed to be delivered upon full payment therefor which

was to be made in installments. Appellant, after the sale, continued to occupy the small building and kept the key to the front building. The locks were changed on the front building in May and to which they did not give a key to the appellant.

About 8 A.M. on August 5, ten dollars in quarters and about two dollars in nickels were missed from the cash register in the front building. The quarters had been previously covered with flourescent salve. No visible evidence was found as to how the building was entered. Later in the morning, appellant consented to the officers examining his hands, clothing, keys, and a desk in the small building in which ten dollars in quarters and some nickels were found. By the use of an ultraviolet lamp they all revealed the presence of flourescent salve when examined by the use of said lamp. In appellant's written statement introduced in evidence, he stated that he had not been in the building for several weeks and did not know how the flourescent salve got on his hands, clothes, and desk unless someone planted it there.

The owners of the building testified that they did not give the appellant or any other person consent to enter the building and take the money.

Appellant, while testifying, contended that he had a right to enter the building because of an agreement at the time of the lease and of the sale to the purchasers; that the rear door of the front building was open on the morning of August 5 when he arrived; and that he needed some cash before leaving town and borrowed about twelve dollars which he took from the cash register and left a note to the owners that he had done so.

Appellant insists that the court erred in permitting the state to prove other thefts and burglaries from and of the front building during a period of several months prior to the offense of burglary here charged to have been committed on August 5, 1955, over his objection that such testimony showed the commission of extraneous offenses with which he was not connected or charged and that it was prejudicial and inflammatory.

The state's attorney in his opening statement of the case to the jury stated that, for several months prior to August 5, small amounts of money had been repeatedly missed from the cash register in the front building. Appellant's objection thereto was overruled and he excepted.

The state introduced testimony showing the unexplained loss of small sums of money from the front building on several occasions prior to August 5, 1955. The state proved that after they had changed the locks on the building, that on June 5, about fourteen dollars in money and a small radio were missing from the building.

The record presents the complained of testimony given by one of the owners of the building while on direct examination by the state as follows:

"Q. I'll ask you to state whether or not, Mr. Stevens, prior to August 5th, 1955, and even prior to April of 1955, there had been a number of occasions when either you or your partner would open up in the mornings and discover various amounts of money had been taken from the cash register between the time you opened up in the morning and the time you closed the perceding night?

*   *   *

"MR. CUNNINGHAM: I object to it as being immaterial and irrelevant and injecting other possible offenses in this case which the defendant is not charged. It is highly prejudicial and I ask the question be stricken and the jury be instructed to disregard it and since it can not be cured by such instruction we request that a mistrial be granted at this time.

"THE COURT: Objection overruled.

"MR. CUNNINGHAM: Note our exception, please.

"Q. Did you understand the question, Mr. Stevens? A. Yes, I did.

"Q. Will you please answer it? A. Yes, sir. We have had money missing from time to time up until August 5th, definitely.

"Q. Do you know approximately how many occasions it happened on? A. Not for sure, but there were several.

"Q. What, if anything, would you or your partner do when you discovered money missing from the cash register when you would open up in the morning? A. Well, as it kept on taking place we finally talked to Chief Krausse about it."

There is no testimony connecting the appellant with the taking of the missing money or any other article from the front building prior to August 5, 1955. The evidence simply shows that other thefts of small sums of money and a radio from the building had been committed by some unknown person or persons.

In Glenn v. State, 76 S.W. 757, a case similar to the instant case where the accused was convicted of burglary, the witness Justiss was permitted to testify "that his house had been broken into on several occasions before the night appellant is alleged to have broken into the house; that on several occasions, which dated back several months, small sums of money were taken from the house; that the reason for watching the house defendant is alleged to have burglarized was because of the previous breaking." In holding this evidence as to the prior offenses inadmissible, this court said:

"* * * But in every case where such extraneous crimes are admissible there must be pertinent testimony tending to show that appellant was guilty of the extraneous offense. Williams v. State, 38 Tex. Cr. R. 128, 41 S.W. 645. In this case, so far as the bill presents the matter, there is no evidence tending to show that appellant was guilty of having entered the house on previous occasions. Nor is that apparent that the previous entries were a part of the res gestae, serving to identify and connect defendant with the crime charged. Nor was there any testimony showing how such extraneous crimes would shed any light on the burglary here charged against appellant."

In Hooks v. State, 97 Tex. Cr. R. 480, 261 S.W. 1053, complaint was made of the receipt in evidence of the testimony of the witness White as follows: "Well, I was lying out there watching the store, guarding it until midnight; my son was there helping me guard it. My store had been broken into just shortly before this time; that is on Saturday night before this Friday night." In holding this evidence inadmissible this court approved the holding in Glenn v. State, supra.

In Clark v. State, 145 Tex. Cr. R. 63, 165 S.W. 2d 747, we said:

"Ordinarily, evidence of extraneous offenses is not admissible unless it tends to prove intent, system or identity where the same is an issue, and then it is not admissible unless appellant's guilt of the extraneous offense is shown. See Wells v. State, 118

Tex. Cr. R. 355, 42 S.W. 2d 607; Williams v. State, 38 Tex. Cr. R. 128, 41 S.W. 645; Morgan v. State, 62 Tex. Cr. R. 120, 136 S.W. 1065; Sawyer v. State, 104 Tex. Cr. R. 522, see page 531, 286 S.W. 209."

The proof of the commission by the accused of other crimes may become admissible when such proof tends to establish intent. 18 Tex. Jur. 61, Sec. 33. In connection with such proof we have said:

"* * * Where 'intent' becomes an issue, proof of other offenses throwing light upon the question is permissible; but before permissible then it must be shown that a prior crime was committed, and with reasonable certainty that accused was the guilty party. Denton v. State, 42 Tex. Cr. R. 427, 60 S.W. 670; Williams v. State, 38 Tex. Cr. R. 128, 41 S.W. 645; Walton v. State, 41 Tex. Cr. R. 454, 55 S.W. 566; Wool v. State, 83 Tex. Cr. R. 121, 201 S.W. 1006. For other authorities, see Branch's Ann. P.C. vol. 1, p. 100. We think the admission of all the testimony with reference to an alleged prior offense was error: First, because it does not appear with sufficient certainty that any crime was then committed; second, accused's connection therewith, even if a crime was committed, is not shown with the degree of certainty required." Fountain v. State, 90 Tex. Cr. R. 474, 241 S.W. 489, 491.

The receipt of evidence of the other thefts from the building, in the absence of any testimony connecting the appellant with them, was of a nature reasonably calculated to injure the appellant.

For the error pointed out, the judgment is reversed and the cause is remanded.

Opinion approved by the Court.

### ON STATE'S MOTION FOR REHEARING

DAVIDSON, Judge.

Counsel for the state presses upon us their contention that we erred in our conclusion that the Glenn case, supra, controlled the disposition of this case.

It is insisted that the case of Pilot v. State, 38 Tex. Cr. R. 515, 43 S. W. 1024, which was not discussed in our original opinion, is here controlling and should be followed.

In the light of that contention, we analyze the holding in the two cases:

The Glenn case holds that in order for the extraneous offenses to be admissible it must be shown that the accused was guilty of those extraneous offenses. The language of the opinion makes clear that holding wherein it is said:

"But in every case where such extraneous crimes are admissible there must be pertinent testimony tending to show that appellant was guilty of the extraneous offense."

There being no evidence showing that the accused in the Glenn case was guilty of the extraneous crimes, and proof of such crimes not being otherwise shown to be admissible, a reversal of the conviction was required.

The Pilot case holds that proof of extraneous crimes which do "not tend in the remotest degree to implicate any particular person" or point to any "particular individual" would not warrant a reversal of the conviction, especially when proof of such crimes tended to be material to the state's case.

It appears that the two holdings are in conflict. An examination, however, reveals to the contrary. The Glenn case is predicated upon the admissibility of the testimony showing the extraneous offenses; the Pilot case is not. In the latter case, the testimony showing the extraneous offenses was received in evidence without objection. The admissibility of the testimony was not before the court. The question which the court was there deciding was that of the propriety of a charge limiting before the jury the effect of the testimony relative to the prior offenses which the court held not to be necessary. Obviously, the admissibility of the testimony was not before the court, and that question was not decided.

As between the two cases, we are constrained to conclude that the Pilot case is not authority for overruling the holding announced by the Glenn case, which has been subsequently followed by the decisions of this court.

We remain convinced that the case was correctly disposed of originally.

The state's motion for rehearing is overruled.