John WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44437.

Court of Criminal Appeals of Texas.

Feb. 23, 1972.

Rehearing Denied July 12, 1972.

**816**

Garland G. Wier, San Antonio, for appellant.

Ted Butler, Dist. Atty., and Lucien B. Campbell, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction was for a violation of Article 535c, Vernon's Ann.P.C.; knowingly and intentionally exposing with lascivious intent his private parts to a person under the age of sixteen years. The punishment, five years.

The appellant's only ground of error is "The trial court committed reversible error in permitting the state to introduce evidence of an extraneous offense . . ."

Two girls under the age of sixteen years testified that at approximately 7:45 p. m., June 13, 1969, they were walking to the drugstore near the home of one of the girls. The appellant, driving a white automobile, drove up beside them and asked them if they wanted a ride. One of the girls said "no". The other girl who was closer to the curb looked to see who was in the car. She saw the appellant, who was nude from the waist down. He was holding his private parts "using his hands to make sure she could see it." She screamed at her companion "don't look—just run." The girls ran from the scene. They ran toward a store to make a telephone call to the mother of one of the girls. The appellant again drove by, laughing at them. The girls observed and remembered the license plate number on the appellant's automobile to be GYW–916. Soon after the offense was committed, the girls related to a police officer what had occurred.

Appellant did not testify; he offered evidence attempting to prove an alibi.

Kate Ward, manager of a motel in Aransas Pass which she said was 150 miles from San Antonio, testified appellant, his wife and mother arrived at the motel at 6:30 or 7:45 p. m. on June 13, 1969. She thought they arrived in a pickup. The appellant's father, she said, arrived at the motel at about daybreak Saturday morning, June 14, 1969.

The appellant's mother testified that the appellant, his wife and she left San Antonio about 3:00 p. m. June 13, 1969, in her husband's pickup and arrived in Aransas Pass at 6:30 to 7:00 p. m. Her son was not out of her sight until after 9:00 p. m. that evening. She testified her husband arrived the next day in Aransas Pass at about daylight. He was driving her son's cream colored Buick automobile which had been parked across the street from her house when they left San Antonio. She said her husband left Aransas Pass for San Antonio at noon Sunday, June 15, 1969, driving the pickup and taking the boat to leave it at Rockport on his way to San Antonio. Appellant's mother said that the appellant, his wife and she left Aransas Pass in the Buick automobile and drove to Brownsville to visit her mother. They arrived on the evening of the 15th. She said that they remained in Brownsville until June 21, 1969, and that Brownsville was a 5½ hour drive from San Antonio. During the time they were in Brownsville, the appellant was not out of her sight for more than two hours at a time. On June 21, 1969, the appellant, his wife and she

drove from Brownsville to Rockport. Several checks signed by the appellant's mother which had been dated and negotiated during the time of their trip at various places before they returned to San Antonio on June 24, 1969, were introduced into evidence.

The appellant's father testified that he drove a tan or cream colored 1962 model Buick automobile belonging to the appellant John Williams to Aransas Pass. He said this automobile had been parked across the street from his house in San Antonio with the keys in it before he started his trip to Aransas Pass at 3:00 a. m. on Saturday, June 14, 1969. He said the appellant usually drove the Buick automobile. Appellant's father did not see the Buick automobile he left with his family on June 15th until he rejoined them in Rockport on June 21, 1969. He also testified the appellant's wife's name was Antoinette.

In rebuttal the State offered the testimony of a fifteen-year-old girl showing she and her girlfriend were walking down a street in San Antonio on the afternoon of June 18, 1969. A white car pulled up beside them and the man driving the car asked if they would like to earn some money. When the girls looked toward him, they observed that he had on no clothes and he was laughing at them. They were unable to identify the appellant as being the driver of that automobile. They were unable to describe the make and model of the automobile but thought that it was a four-door automobile. They did memorize and report to Officer Fleming that the license number on the automobile was GYW–916 and that the driver was an Anglo male, 25 to 28 years old with curly hair who needed a shave.

The custodian of the records of the Automobile Department of the Bexar County Tax Assessor-Collector's Office testified that the automobile for which the license plate GYW–916 had been issued was a 1962 four-door Buick automobile, registered in the name of Antoinette G. Williams.

The appellant specifically urges that "The evidence relative to the extraneous offense could not be brought within any of the recognized exceptions to the rule which forbids the introduction of evidence of extraneous offenses"; that it was error for the trial court to admit evidence of the details of any extraneous offense; and that the State failed to prove that the appellant was the "perpetrator" of the extraneous offense.

"Evidence of the commission of other crimes by the accused is admissible as part of the res gestae or to show identity of the person or crime, intent, motive, scienter, system, and malice. Evidence of other crimes is also admissible to discredit the accused when he testifies in his own behalf, or to show his failure to have reformed, or to controvert a defensive theory advanced by him." 23 Tex. Jur.2d, Evidence, Sec. 195, p. 300–301; and see Owens v. State, 450 S.W.2d 324 (Tex.Cr.App.1969) and Blankenship v. State, 448 S.W.2d 476 (Tex.Cr.App. 1969).

A closely related rule is that:

"If evidence is competent, material and relevant to the issues on trial, it is not rendered inadmissible merely because it may show that the defendant is guilty of another crime." 1 Wharton, Criminal Evidence Sec. 233 (12th ed. 1955); 1 Branch's Ann.P.C. Sec. 188 (2d ed. 1956).

The appellant offered detailed alibi evidence to account for his presence from 3:00 p. m. June 13, 1969, until June 24, 1969. A considerable amount of this evidence offered concerned the whereabouts of the Buick automobile. Both direct and circumstantial evidence showed it to be the automobile used by the appellant during the commission of the offense for which he was charged. Evidence to show the location of the Buick automobile became rel-

evant because of the alibi evidence offered by appellant. The State had the right to attack and attempt to disprove the appellant's evidence as to the whereabouts of the automobile. The State's evidence showed the automobile to be in San Antonio on the afternoon of June 18, 1969, where it was seen by the two young girls.

There is a distinction not often recognized between the offering of evidence to rebut a defensive issue such as alibi which incidentally tends to show or does show the commission of an extraneous offense and the offering of proof of an extraneous offense for the purpose of showing intent, system or scheme, motive, absence of mistake or identity.

The distinction, however, was recognized by Presiding Judge Hawkins in Ivey v. State, 212 S.W.2d 146 (Tex.Cr.App.1948), where he said:

"The state, for the purpose of showing the improbability of his defensive theory, introduced the evidence complained of. Under such a state of facts, the evidence became admissible notwithstanding it tended to show an extraneous offense. Of course, the evidence was not admissible for the purpose of impeachment, or showing intent, identity, etc. We did not base our opinion holding it admissible upon any such theory. One of the best-known exceptions to the rule against proving extraneous crimes is that any competent evidence which tends to defeat the defense urged is admissible though it tends to show another offense."

The State did not offer the testimony for the purpose of showing the commission of an extraneous offense. The testimony was offered for the purpose of and it was properly admitted to rebut the appellant's defense of alibi. That the State's evidence tended to show an extraneous offense was incidental to the purpose for which it was offered. Compare Schneider v. State, 392 S.W.2d 130 (Tex.Cr.App.1965) and Hutchins v. State, 172 Tex.Cr.R. 525, 360 S.W.2d 534 (Tex.Cr.App.1962).

■ Where, as here, the evidence is offered to rebut the defensive issue there need not be proof as urged by the appellant that the appellant was the "perpetrator" of the extraneous offense which may incidentally have been proved. Compare Chambers v. State, 462 S.W.2d 313 (Tex. Cr.App.1970); Hart v. State, 447 S.W.2d 944, 951 (Tex.Cr.App.1969) and Cage v. State, 167 Tex.Cr.R. 355, 320 S.W.2d 364 (Tex.Cr.App.1958), cert. denied, 360 U.S. 917, 79 S.Ct. 1434, 3 L.Ed.2d 1533 (1959), rehearing denied, 361 U.S. 855, 80 S.Ct. 45, 4 L.Ed.2d 94 (1959).

Appellant's ground of error is overruled. The judgment is affirmed.

Opinion approved by the Court.

ODOM, Judge (concurring).

I concur in the result reached by Judge Dally, but for the reasons expressed herein.

The testimony of the fifteen year old girl was that she and a companion were walking down a street in San Antonio on the afternoon of June 18, 1969, when a white car pulled up beside them. The male occupant of the car asked them if they would like to earn some money. The man was nude and laughing at them. The girls memorized the license number and telephoned the police. It was shown that the license number of the automobile was GYW–916. An automobile with that license number was shown to have been registered in the name of appellant's wife.

Although the girl was unable to identify appellant as the perpetrator of this offense, the state had a right to show that appellant's automobile was in San Antonio on June 18 in order to impeach his witnesses and to rebut his defensive theory. The testimony concerning the extraneous offense was incidental to showing that the automobile was in San Antonio.

When evidence is offered for one purpose and satisfies all the requirements for

admissibility applicable to that purpose it does not become inadmissible because it could not be admitted for some other purpose, or because a jury might consider it in the latter capacity. Stallings v. State, Tex. Cr.App., 476 S.W.2d 679 (1971); Haynes v. State, Tex.Cr.App., 475 S.W.2d 739 (1971); 1 Wigmore, Evidence, Sec. 13 (3d Ed.).

A witness should be permitted to testify concerning collateral facts that serve to fix in his memory a material fact to which he has testified. Brittain v. State, Tex.Cr. App., 40 S.W. 297; Bice v. State, 37 Tex. Cr.R. 38, 38 S.W. 803; 61 Tex.Jur.2d, Witnesses, Sec. 133. The reason for allowing such testimony is:

> "The party offering a witness may desire to make plain the strength of the witness' grounds of knowledge and the reasons for trusting his belief. This is a legitimate purpose. But, in pursuing it, the witness often will naturally state circumstances which may give indirectly some unfavorable impressions against the opposite party . . . Nevertheless, . . . the general rule is that the witness may on the direct examination state the particular circumstances which legitimately affected his knowledge or recollection, even though the fact would otherwise be inadmissible . . ." 2 Wigmore, Evidence, Sec. 655 (3rd Ed.).

While there is some risk that the jury might improperly consider such testimony, the burden is on the opposing party to request a limiting instruction from the trial court; and the refusal to give such instruction may constitute reversible error.[1] Coker v. State, 35 Tex.Cr.R. 57, 31 S.W. 655; 1 Wigmore, Evidence, Sec. 13 (3rd Ed.). Where the competence or logical relevance of this type of testimony is far outweighed by its prejudicial effect, a limiting instruction will be insufficient to alleviate the risk, and the testimony should not be admitted. Dyer v. State, 47 Tex.Cr.R. 258, 83 S.W. 192. However, the initial determination on the admissibility of evidence is within the discretion of the trial court; and this court will not reverse unless a clear abuse of discretion is shown. Lanham v. State, Tex.Cr.App., 474 S.W.2d 197.

The term "extraneous offense" has no magical qualities, and the evidentiary rules governing extraneous offenses when introduced for one purpose need not be invariably applied where the extraneous offense was introduced for some other purpose. In order to determine what principle of law should be applied to a given situation involving the introduction of evidence, it is necessary to determine the purpose for which the evidence was introduced. Having determined that the extraneous offense was not offered for the purpose of proving identity, intent, etc., but was offered for the purpose of showing why the witness remembered that appellant's car was in San Antonio on the evening in question, the issue to be decided is whether the testimony concerning the extraneous offense was so inherently prejudicial that, even absent a request by appellant for a limiting instruction, the decision of the trial court should be overturned. Dyer v. State, supra; Brittain v. State, supra; Bice v. State, supra.

Under the facts of the instant case, I can find no clear abuse of the trial court's discretion in admitting the testimony concerning the extraneous offense.

I concur.

ONION, Presiding Judge (dissenting).

Today "the majority" adopts a broad, new and dangerous rule—an exception to an exception which finds no support in the law or the particular facts of this case. The majority holds that if any fact connected with an extraneous offense which tends to rebut a defensive issue becomes admissible, then the extraneous offense and all the details thereof also become admissible without any proof that the accused

---

1. In the instant case, appellant did not request a limiting instruction.

was guilty of such extraneous offense or was its perpetrator. I cannot agree.

The fact that a witness or witnesses saw an automobile bearing license No. GYW 916 in San Antonio on June 18, 1969, would have been admissible in light of appellant's alibi testimony, but to permit the State to go further and show an extraneous offense and the details thereof without showing that the appellant was the offender was error in my opinion, particularly where the prosecuting attorney testified earlier he had no extraneous offenses in which identification could be made of the appellant as the guilty party.

By offering evidence of alibi the appellant called into question the complaining witness' identification of him as the man who indecently exposed himself, thus authorizing the admission of any properly proven extraneous offenses on the issue of identity. Owens v. State, 450 S.W.2d 324 (Tex.Cr.App.1969). "The majority" admits that the extraneous offense offered would not have been admissible on the issue of identity, intent, system, etc., unless there was proof that the appellant was the perpetrator thereof, but claims there is a different rule where the same evidence is offered, not on the issue of identity, etc., but to refute the defensive theory which in the instant case was alibi. In support of such position the majority cites no authority but asks the reader to "compare" Chambers v. State, 462 S.W.2d 313 (Tex.Cr. App.1970) and Hart v. State, 447 S.W.2d 944 (Tex.Cr.App.1969), both opinions by this writer. Neither stands for the proposition that extraneous offenses or transactions may be offered without a showing that the accused is the perpetrator. In Chambers the witness reported the suspicious conduct of a group of men to the police along with the license number of their vehicle. He did not testify that the group had engaged in any criminal activity and their acts were not shown to relate to any offense. The evidence was offered to show the steps eventually leading to appellant's arrest. In Hart there was evidence of an extraneous transaction which did constitute a penal offense admitted but Hart was clearly identified as being involved in the extraneous transaction. The evidence was held admissible to show intent, system, design, and identity. Nor in my opinion does the cited case of Cage v. State, 320 S.W.2d 364 (Tex.Cr.App.1958), cert. den. 360 U.S. 917, 79 S.Ct. 1434, 3 L. Ed.2d 1533 (1959), support the position taken by the majority. In Schneider v. State, 392 S.W.2d 130, 133 (Tex.Cr.App. 1965), and Hutchins v. State, 360 S.W.2d 534 (Tex.Cr.App.1962), also cited by the majority, the defendants were clearly identified with the extraneous transaction admitted.

In 23 Tex.Jur.2d, Evidence, Sec. 194, p. 294, it is stated:

"As a general rule, in criminal cases the accused can be convicted, if at all, only by evidence that shows he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible. . . ."

There are, of course, exceptions to the general rule.

In 23 Tex.Jur.2d, Evidence, Sec. 195, p. 300, it is written:

"Evidence of the commission of other crimes by the accused is admissible as part of the res gestae or to show identity of person or crime, intent, motive, scienter, system, and malice. Evidence of other crimes is also admissible to discredit the accused when he testifies in his own behalf, or to show his failure to have reformed, or to controvert a defensive theory advanced by him. These exceptions to the general rule prohibiting evidence of other crimes are discussed in greater detail immediately hereinafter. It must be remembered, however, that even though evidence of another crime may be relevant to the instant proceed-

*ing, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator."* (Emphasis supplied.)

The distinction sought to be made by the majority is thus not recognized.

In 1 Branch's Ann.P.C., 2d ed., Sec. 188, p. 204, it is written:

"It is error to admit evidence of another offense when defendant is not shown to be the party guilty of that offense." (numerous cases cited)

And in Shepherd v. State, 143 Tex.Cr.R. 387, 158 S.W.2d 1010, 1011 (Tex.Cr.App. 1942), the court said in reversing the conviction:

"Whatever the court's object was in admitting the testimony, it seems to be well settled in this state that evidence of extraneous offenses shall not be received unless the accused is satisfactorily shown to be a party to the commission of such offense, *even though proof of extraneous offenses comes within some of the exceptions.* In support of the opinion here expressed, we refer to the following authorities: Fountain v. State, 90 Tex. Cr.R. 474, 241 S.W. 489; Denton v. State, 42 Tex.Cr.R. 427, 60 S.W. 670; Nichols v. State, 138 Tex.Cr.R. 324, 136 S.W.2d 221, and many other cases there cited." (Emphasis supplied.)

In Perez v. State, 165 Tex.Cr.R. 639, 310 S.W.2d 334 (Tex.Cr.App.1958), this court stated:

"Furthermore, there was no proof connecting appellant with the other thefts and for this reason the evidence should not have been admitted. Wells v. State, 118 Tex.Cr.R. 355, 42 S.W.2d 607; Hughitt v. State, 123 Tex.Cr.R. 168, 58 S.W.2d 509 and Carmean v. State, Tex. Cr.App., 163 Tex.Cr.R. 218, 290 S.W.2d 240."

In Tomlinson v. State, 422 S.W.2d 474 (Tex.Cr.App.1968), this court, speaking through Judge Morrison, pointed out that *"no extraneous offense* should be offered unless the State is prepared to prove that the accused committed the same." (Emphasis supplied.)

In light of these authorities an examination of the "extraneous offense" introduced should be made.

Della Gallegos testified that on June 18, 1969,[1] she and her girl friend, Jennifer Garcia, were walking down a San Antonio street when a man in a white car pulled up and asked if they would like to earn some money. They observed he had no clothes on and was laughing. They ran and one girl remembered the numerals on the license plate and the other the letters. The police were called. At the time of trial Della Gallegos could not remember the license number. She was unable to identify the appellant saying "his hair was different" and testified no charges had been filed in connection with the incident because of a lack of identification. She was unable to describe the make or model of the automobile other than it was white and she thought it had four doors. She expressly denied that it could have been tan or cream colored.

Officer Fleming testified that it was on June 18, 1969, that he received the report from Della Gallegos and her friend; that the license number given him was GYW 916; that the driver was described as an Anglo male, 25 to 28 years old with curly hair who needed a shave. The report did not reflect whether the license number given was a Texas license or from another jurisdiction, nor does it give the year or the color of the plate. The description of the driver contrasts sharply with that of the complaining witness who identified the appellant and who described the man who exposed himself to her as having "brown

---

1. On the hearing of the motion to suppress she testified as to the date, but when testifying before the jury she admitted she could not recall the date and remembered only that the incident occurred during the summer of 1969.

hair," "short brown hair" and being in his late thirties. The actual physical appearance of the appellant and his age are not reflected by this record.

William C. Wilford was called as a rebuttal witness during the trial on September 16, 1970. He identified his position as custodian of the records of the Automobile Department for the Tax Assessor's office of Bexar County. He was simply asked:

"Q. Among those license registration tags and receipts do you have a number GYW 916 registered?

"A. Yes, I do.

"Q. Could you tell us who that tag is registered to?

"A. It's registered in the name of Antoinette G. Williams.

"Q. Can you give us the address of Antoinette G. Williams?"

"A. 206 Sonora."

Thereafter Wilford described the automobile as a 1962 Buick, four-door, but stated the color was not listed. At no time did the witness indicate when such license tags were issued to the automobile in question. Whether he was testifying from current 1970 records, from 1969 or earlier records is not revealed. The license receipts, etc., were not introduced into evidence.

This was all the evidence offered to connect the appellant or the Buick (which the undisputed testimony showed to be tan or cream colored) with the extraneous offense.

Clearly the appellant was not identified as being present and there is no showing that on June 18, 1969, the Buick actually bore 1969 Texas license plate Number GYW 916. Whether the "white car" observed by the witness Gallegos even bore Texas license plates is not established by the record.

The rule forbidding the introduction of other crimes is one of evidence and arises out of a fundamental demand for justice and fairness. Gordy v. State, 159 Tex.Cr. R. 390, 264 S.W.2d 103 (Tex.Cr.App.1953). This general rule should be strictly enforced where applicable because of the prejudicial effect and injustice of such evidence and should not be departed from except under conditions which clearly justify such a departure and are necessary. Higgins v. State, 87 Tex.Cr.R. 424, 222 S.W. 241 (Tex.Cr.App.1920); Urban v. State, 158 Tex.Cr.R. 106, 253 S.W.2d 38 (Tex. Cr.App.1952).

The action taken by "the majority" being neither supported by law or facts is totally unjustified. Even Judge Odom in concurring cannot agree with the reasoning of "the majority." He concurs in the result but for reasons of his own.

I vigorously dissent.

ROBERTS, J., joins in this dissent.