**Hershel Floyd LOVE, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–85–129–CR.**

Court of Appeals of Texas, Fort Worth.

April 29, 1987.

Rehearing Denied June 3, 1987.

McMillan & Lewellen, P.C., Martin L. Peterson, Stephenville, for appellant.

Dan B. Grissom and Andrew Ottaway, Granbury, for State.

Before FENDER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for aggravated sexual abuse under former TEX.PENAL CODE ANN. sec. 21.05 (Vernon 1974) (as amended by Act of May 25, 1981).[1] After the jury found appellant, Hershel Floyd Love, guilty, evidence was offered that he had been in the penitentiary for six previous felonies and had been convicted for simple assault in Hood County. The jury found that a single enhancement paragraph was true, and assessed punish-

ment at life in the Texas Department of Corrections.

We affirm.

Evidence at trial showed that on August 29, 1983, appellant robbed and terrorized a group of five people who were playing dominoes at the home of Oleta Nichols in Hood County, Texas. In addition to robbing the parties, the defendant forced one of the persons, D__ C__, to submit to anal intercourse a number of times.

■ In his first point of error appellant contends that the trial court erred in denying his motion to quash the indictment. Appellant urges that although the indictment sufficiently alleged an offense, it failed to adequately particularize the conduct which would be relied upon by the State to show appellant's violation of the law. Specifically, appellant complains that the indictment was deficient in that it failed to indicate against which of the statutory meanings of "without consent" appellant should defend.

The aggravated sexual abuse statute in effect at the time, states as follows:

(a) A person commits an offense if he commits sexual abuse as defined in Section 21.04 of this code ... and he:

. . . .

(2) by acts, words, or deeds places the victim in fear of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone; or

(3) by acts, words, or deeds occurring in the presence of the victim threatens to cause death, serious bodily injury, or kidnapping to be inflicted on anyone ...

See id. Former section 21.04, in relevant part, provided as follows:

(a) A person commits an offense if, without the other person's consent and with intent to arouse or gratify the sexual desire of any person, the actor:

(1) engages in deviate sexual intercourse with the other person, not his spouse, whether the other person is of the same or opposite sex....

1. See Act of May 25, 1981, ch. 202, sec. 2, 1981 Tex.Gen.Laws 471, 471, *repealed by* Act of June 19, 1983, ch. 977, sec. 12, 1983 Tex.Gen.Laws 5311, 5321 (effective Sept. 1, 1983).

. . . .

(b) The intercourse is without the other person's consent under one or more of the following circumstances:

[(1) through (7) provide different definitions of lack of consent.]

TEX.PENAL CODE ANN. sec. 21.04 (Vernon 1974).[2]

The indictment alleged that appellant:

[D]id then and there intentionally, with intent to arouse and gratify the sexual desire of said defendant, by threats and force, without the consent of [D— C—] engage in deviate sexual intercourse with the said [D— C—] by then and there placing his genitals in contact with the anus of the said [D— C—] who was not his spouse, and in the course of said criminal episode the defendant, in the presence of [D— C—], by acts, words, and deeds threatened to cause death and serious bodily injury to be inflicted on [D— C—] and the defendant by acts, words, and deeds placed [D— C—] in fear of death and serious bodily injury to be imminently inflicted on [D— C—]. . . .

This same issue was raised in *Arnold v. State*, 679 S.W.2d 156, 160–61 (Tex.App.— Dallas 1984, pet. ref'd). The appellant in *Arnold* also alleged that his indictment was insufficient because it did not allege which of the seven circumstances listed in former TEX.PENAL CODE ANN. sec. 21.- 02(b) (Vernon 1974) (as amended by Act of May 15, 1975),[3] applied to the facts of his case to establish lack of consent. The court in *Arnold* held that the indictment was sufficient to allege aggravated rape in that "[t]he allegation that appellant compelled submission 'by threatening serious

bodily injury to be imminently inflicted' was sufficient to allege how the intercourse was without the consent of the victim." *See Arnold*, 679 S.W.2d at 160–61; *see also Johnson v. State*, 623 S.W.2d 654, 655 (Tex.Crim.App.1981). The indictment in this case alleges the facts and circumstances of the offense which made the act of sexual intercourse nonconsensual. The allegations concerning the threats were sufficient to place appellant on notice of the kind of lack of consent upon which the State would base its case. *See Johnson*, 623 S.W.2d at 656. Appellant's first point of error is overruled.

■ In his second point of error appellant contends that the trial court erred in denying appellant's motion to quash the jury panel. The record reflects that certain prospective jurors "spread the word" to an undetermined number of other members of the panel during a recess between the State's voir dire examination, that appellant was being tried a second time due to a technical defect in the verdict at a prior trial.[4]

Appellant contends that the trial court should have granted his challenge to the entire panel, because he could not assure himself of the most successful use of his peremptory challenges. Appellant asserts there was no means by which he could accurately determine the bias of those who had heard the discussions, since pointed questions would only run the risk of influencing or informing the prospective jurors more.

The record reflects that fifteen jurors indicated they had heard some discussion

---

**2.** *See* Act of June 14, 1973, ch. 399, sec. 1, 1973 Tex.Gen.Laws 883, 916–17, *repealed by* Act of June 19, 1983, ch. 977, sec. 12, 1983 Tex.Gen. Laws 5311, 5321 (effective Sept. 1, 1983).

**3.** *See* Act of May 15, 1975, ch. 203, sec. 1, 1975 Tex.Gen.Laws 476, 476–77, *repealed by* Act of June 19, 1983, ch. 977, sec. 12, 1983 Tex.Gen. Laws 5311, 5321 (effective Sept. 1, 1983).

**4.** Appellant was initially tried in this cause in November of 1983. The jury in the earlier cause found appellant guilty of aggravated sexual abuse, and found one of the enhancement paragraphs to be "true". Appellant was sen-

tenced to life in the Texas Department of Corrections and was assessed a fine of $10,000.00. The verdict was appealed and subsequently affirmed. *Love v. State*, No. 2-83-387-CR (Tex. App.—Fort Worth, May 24, 1984) (unpublished opinion). Appellant later attacked the sentence by writ of habeas corpus claiming the jury could not assess a fine on a first degree felony that had been enhanced. The Court of Criminal Appeals agreed, and reversed and remanded. *Ex parte Love*, 685 S.W.2d 679 (Tex.Crim.App. 1985) (unpublished per curiam opinion). Appellant was again tried on this cause on April 9, 1985, with a single enhancement paragraph. This is the appeal from the April conviction.

about the case at the courthouse that day. Defense counsel questioned each of these jurors individually, asking each of them whether their knowledge that the case involved a retrial would put appellant at a disadvantage with them, and whether they could presume him innocent. The trial judge permitted individual voir dire of each juror who admitted that the case had been discussed at the courthouse. Defense counsel did not request any additional peremptory challenges. There is no showing in the record that appellant was required to accept any particular juror who was objectionable to him. *See Payton v. State*, 572 S.W.2d 677, 680 (Tex.Crim.App.1978) (opinion on reh'g).

In *Gordy v. State*, 159 Tex.Cr.R. 390, 264 S.W.2d 103 (1953), on voir dire examination of the jury panel by the defendant's counsel, a member of the jury panel answered that nothing he had read or heard about the case would influence his verdict, but the fact that defendant had been previously convicted would do so. It was not shown that that juror had served on the case, but the defendant urged that all of the panel members thus received information to the effect that he had been previously convicted of a similar offense. The Court of Criminal Appeals said:

> The rule is somewhat relaxed in misdemeanor cases, where an accused may be tried for more than one offense upon the same complaint and information.
>
> We have held that a juror is not disqualified by reason of his knowledge of other convictions against the accused. *See Stephens v. State*, 137 Tex.Cr.R. 551, 132 S.W.2d 878 [1939].
>
> There is no showing that any juror who served in the case was prejudiced or had formed an opinion by reason of his knowledge of the former conviction.
>
> The evidence sustains the conviction and we find no reversible error.

*Id.*, 264 S.W.2d at 105.

In *Meadows v. State*, 143 Tex.Cr.R. 611, 160 S.W.2d 528 (1942) (per curiam), the Court of Criminal Appeals said:

> It is insisted that members of the jury panel from which the jury in this case was selected heard the evidence or were present upon a former trial of this case, and were, therefore, disqualified from serving as jurors upon the instant trial. The bill of exception presenting this question affirmatively reflects that the jurors selected to try this case stated that they had no opinion in the cause and were not in any manner biased in favor of or prejudiced against the appellant. The mere fact that a juror has heard the evidence in a former trial does not disqualify him from serving as a juror upon a subsequent trial of the same case. It is only when such a juror has formed or expressed an opinion as to the guilt or innocence of the accused that he is disqualified to sit in the case. [Citations omitted.]

*Id.*, 160 S.W.2d at 528.

The record reflects that appellant was allowed to individually voir dire each panel member who had heard discussion concerning the retrial. None of the jurors seated stated that they could not presume appellant innocent or that they were influenced by the knowledge that it was a retrial. None of the jurors indicated that they had established an opinion as to the guilt or innocence of appellant. *See id.; Perkins v. State*, 120 Tex.Cr.R. 399, 46 S.W.2d 672, 676 (1931) (per curiam). Appellant's second point of error is overruled.

In his third point of error, appellant contends that the trial court erred in failing to transfer venue either on its own motion or upon appellant's motion. Appellant complains that it was error to refuse to transfer venue because appellant was clearly forced to accept jurors who had read inadmissible evidence through newspaper accounts before they entered the jury box. Appellant contends that the information gained through the pre-trial publicity was inherently suspect and the resulting probability of unfairness required the procedural safeguard of a change of venue.

Prior to trial, appellant had made a motion for change of venue pursuant to TEX. CODE CRIM.PROC.ANN. art. 31.03(a)(1) (Vernon Pamph.Supp.1987). Appellant presented affidavits from citizens of Hood

County who stated that appellant could not obtain a fair trial due to the publicity. The State filed a controverting affidavit from a resident of Hood County, Texas. The State's affiant declared that he had read the affidavits in support of appellant's motion for change of venue, and that the affiants of said affidavits were not credible as their means of knowledge was not sufficient to support and justify the statements contained in the affidavits. *See* TEX. CODE CRIM.PROC.ANN. art. 31.04 (Vernon 1966). The affiant further stated that he was convinced that appellant could receive a fair trial in Hood County. Appellant renewed his suggestion that venue should be changed after the voir dire examination of the jury was in progress. Both times, the trial court denied the motion.

■ The need for a venue change because of local prejudice against a defendant is predominantly a constitutional question, *Revia v. State,* 649 S.W.2d 625, 626 (Tex. Crim.App.1983), because due process promises a prejudice-free jury. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961). Pre-trial publicity will entitle a defendant to a venue change if he can show either (1) news media coverage so damaging that it must be presumed no unbiased jury could be selected, or (2) from the totality of the circumstances, actual prejudice. *See Murphy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589, 593–94 (1975); *Barefoot v. State,* 596 S.W.2d 875, 881 (Tex.Crim.App.1980), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).

■ It has been held that "[w]here outside influences [e.g., the news media] affecting the community's climate of opinion as to a defendant are inherently suspect, the resulting probability of unfairness requires suitable procedural safeguards, such as a change of venue, to assure a fair and impartial trial." *Morris v. State,* 488 S.W.2d 768, 771 (Tex.Crim.App.1973) (quoting *Pamplin v. Mason,* 364 F.2d 1, 5 (5th Cir.1966)). *See also Berghahn v. State,* 696 S.W.2d 943, 951 (Tex.App.—Fort Worth 1985, pet. ref'd). But, widespread publicity which, on the whole, is not inflammatory is not inherently prejudicial. *United States v. Haldeman,* 559 F.2d 31, 61–62 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

■ When attempting to determine the damage done by pre-trial publicity, some revealing factors are: (1) the nature of pre-trial publicity and the particular degree to which it has circulated in the community; (2) the connection of government officials with the release of the publicity; (3) the length of time between the dissemination of the publicity and the trial; (4) the severity and notoriety of the offense; (5) the area from which the jury is to be drawn; (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. *Henley v. State,* 576 S.W.2d 66, 71–72 (Tex.Crim. App.1978).

In the case before us, only two of the twelve jurors had read anything in the paper about the case. When asked what she had read, Juror Culpepper stated, "[i]t's been over a year ago, all I remember was that it happened, but you know, it was just in the local papers." When asked whether she had formed any opinion as to appellant's guilt or innocence she stated that she had not. She further said that she could sit on the jury and decide the case solely on the evidence that she heard. The second juror, Juror Reiling, stated that he had read something about the case. He stated that he would make the State prove each of the elements of the crime and if they did not he would acquit appellant.

■ We will now review the factors used to determine the damage done by pre-trial publicity. The first factor is the nature of the pre-trial publicity and the particular degree to which it has circulated in the community. There is no evidence before us of the nature of the publicity or whether it was particularly inflammatory or prejudicial. However, because only two of the twelve jurors had read anything about the case, there is some evidence that news of

the case was not widely circulated in the community. Concerning the second factor, there is no evidence before us that any government officials were connected with the release of the publicity concerning this case. The third factor is the length of time between the dissemination of the publicity and the trial. It is clear that the media covered the case in November of 1983. It is not clear whether the media covered the retrial of appellant. Concerning the fourth factor, the aggravated sexual abuse of a woman in a small town would probably be considered severe and notorious. As to the fifth factor, the area from which the jury was to be drawn is a small town community. However, because of the number of jurors who had not heard anything about the case, we cannot assume that there is prejudice to appellant merely because it is a small town community. Regarding the sixth factor, there is no evidence of other events occurring in the community which either affect or reflect the attitude of the community or of individual jurors toward the defendant. The last factor is whether there are any factors likely to affect the candor and veracity of the prospective jurors on voir dire. There is no evidence before us concerning this factor.

On the whole, after reviewing the record concerning the publicity preceding the second trial, there is no evidence that the atmosphere was prejudicial to appellant. Each of the jurors stated, more or less, that they would be fair and that they would try appellant on the facts before them and not on anything that they had heard about him or about the case. From a totality of the circumstances, we conclude that the trial court did not abuse its discretion by denying appellant's motion. *See Ussery v. State*, 651 S.W.2d 767, 772 (Tex.Crim.App. 1983). Appellant's third point of error is overruled.

In his fourth point of error, appellant contends that the trial court erred in permitting witnesses to make an in-court identification of appellant after the State had destroyed the evidence necessary for him to be able to show whether the same was tainted by impermissibly suggestive pre-trial identification procedures.

The record reflects that Officer Mike Stanley displayed a xeroxed copy of a photo lineup to Oleta Nichols and D— C—, on the same night that the crime occurred. Subsequently, Officer Stanley made a xeroxed copy of another photo lineup (which also included appellant's photograph) for purposes of sending it to Johnson County for their use in another investigation. In preparing the instant case for presentation to the grand jury, Officer Stanley inadvertently substituted the copy of the photo lineup made for Johnson County officials for the copy of the photo lineup actually shown to the victims at the scene. At trial in this case, Officer Stanley could not locate either the original or xeroxed copy of the photo lineup shown to the victims. However, he was able to testify as to which pictures were shown, and was able to actually recreate the photo lineup for the court.

In a similar case, *Davis v. State*, 649 S.W.2d 380 (Tex.App.—Fort Worth 1983, pet. ref'd), the original pictures from a photo lineup were misplaced by the Fort Worth Police Department. The police officer in charge of the photo lineup testified that he could not find them and could not account for their disappearance. This court, in addressing a point of error in which the appellant in that case had contended that he was entitled to a new trial because the State failed to produce the pictures used in the photo lineup when the same were being challenged as impermissibly suggestive, said:

The granting of a new trial is within the sound discretion of the trial court and will not be disturbed unless there is a clear showing of abuse of that discretion. *Sandoval v. State*, 151 Tex.Cr.R. 430, 209 S.W.2d 188 (Tex.Cr.App.1948); *Beal v. State*, 520 S.W.2d 907 (Tex.Cr. App.1975). V.A.C.C.P. art. 40.03(5) provides that a new trial shall be provided where written evidence, tending to establish the innocence of the defendant, has been intentionally destroyed or removed so that it could not be produced upon the trial. There is no evidence in this case that the pictures used were intentionally destroyed or removed. Mayo candidly

testified he could not account for their disappearance, and produced the best he said he had, the Xerox copies of the pictures. Miller's identification of appellant was independent of any pretrial procedure.... When the identification testimony is of an independent origin apart from any pretrial identification procedure, the State's inability to produce a set of photographs has no adverse effect on the admissibility of the identification testimony. *Van Byrd v. State*, 605 S.W.2d 265 (Tex.Cr.App.1980). There was no abuse of discretion by the trial court in denying the motion for new trial.

*Id.*, at 382.

■ Here, as in *Davis* and *Van Byrd*, a witness, Oleta Nichols, made a positive and immediate identification of appellant both from the photo lineup and also in a live lineup. Another witness, D— C—, was less positive than Oleta Nichols when identifying appellant in the photo lineup. However, she was positive when she identified appellant in a live lineup. This uncertainty goes to the weight to be given the evidence and not to its admissibility. *See Garza v. State*, 633 S.W.2d 508, 513 (Tex.Crim.App. 1981) (opinion on reh'g).

■ Oleta Nichols testified that during the attack she viewed the intruder for several minutes while he was standing approximately a foot away from her in medium light. She stated that she was afraid but that she concentrated on identifying the man. In particular she concentrated on identifying one tattoo of a butterfly located above appellant's right breast. When asked how she had identified appellant at the first trial, Nichols stated "I'll never forget his face. I could pick him out of a crowd of 1,000."

D— C— testified that she saw the intruder face to face when he first came in the door. She stated that she saw a tattoo on the intruder's left arm. She also testified that when she viewed the photo lineup, she saw a couple of people that she thought looked something like the intruder but she could say positively at trial that these photographs were of appellant.

However, when D— C— testified concerning the live lineup of September 9, 1983, she testified that she recognized appellant as the intruder. When asked, "[n]ow, what is it about the Defendant that you remember that allowed you to identify him in the trial of this cause?" She answered, "[w]ell, just he—he was—he looks, he was the same guy. He looked—and then he had a tattoo that I remembered seeing." She stated that she had no doubt in her mind whatsoever that appellant was the same man who attacked her in Oleta Nichols' house.

We hold that the in-court identification of appellant by Oleta Nichols and D— C— rested on independent recollections of their encounter with appellant, and their in-court identifications were not influenced by any pre-trial identifications that they made. *See Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Crim.App.1982).

■ When the identification testimony is of an independent origin apart from any pre-trial identification procedure, the State's inability to produce a set of photographs has no adverse affect on the admissibility of the identification testimony. *See Davis*, 649 S.W.2d at 382. Appellant's fourth point of error is overruled.

■ In his fifth point of error appellant contends that the trial court erred in compelling appellant to remove his shirt and display before the court and jury tattoo markings on a portion of his body not normally open to public view. At trial, Oleta Nichols testified that appellant had a tattoo down his arm and a tattoo above his right breast. She also testified that he had a scar on his stomach. After the description, the attorney for the State asked the court to direct appellant to move over in front of the jury and remove his shirt so that the jury could observe the body markings on appellant. At that time appellant's attorney objected contending that the procedure was a compulsion of testimony by appellant against himself and that the procedure would deprive appellant of his right to a fair trial and to due process. It was further contended that the procedure would subject appellant to unnecessary prejudice

in the eyes of the jury and to a form of insult.

In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) the Supreme Court said:

We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a "testimonial" nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt.... We recognized that "both federal and state courts have usually held that ... [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."

*Id.*, 388 U.S. at 222–23, 87 S.Ct. at 1930, 18 L.Ed.2d at 1154–55 (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). In *Taylor v. State*, 474 S.W.2d 207 (Tex.Crim.App.1971) the Court held that it was not error to require the appellant in that case to stand up, walk in front of the witness and utter the words "[g]et out of the light." *Id.*, at 209. The Court said, "it has been held proper *during a trial* to require the defendant to stand, put on a hat, remove his glasses or make a footprint for the purpose of identification." *Id.*, at 210 (original emphasis). We hold that appellant was not required to give evidence against himself in the removal of

his shirt in the courtroom. *See id.; see also United States v. Wade*, 388 U.S. at 222–23, 87 S.Ct. at 1929–30.

██ Appellant next contends that he was compelled to make an indecent or offensive exhibition in removing his shirt which tended to insult, degrade and humiliate him. Appellant contends that the trial court could have prevented this from happening by the taking of an accurate photograph of his body for exhibition to the jury, as appellant had offered to have done. We hold that the removal of his shirt was neither indecent nor offensive and was not designed to degrade appellant. Appellant's fifth point of error is overruled.

In his sixth point of error appellant contends that the trial court erred in admitting into evidence at the punishment stages, as proof of appellant's criminal record pursuant to former TEX.CODE CRIM.PROC. ANN. art. 37.07, sec. 3(a) (Vernon 1981),[5] records of convictions in: cause number 5400 in the 118th District Court of Howard County; cause number 11,855 in the County Court of Hood County; cause number 4571 in the District Court of Lea County, New Mexico; cause number 2401 in the District Court of Gillespie County; cause number 5399 in the 118th District Court of Howard County; and cause number 3518 in the District Court of Mason County. Appellant's seventh point of error states the evidence is insufficient to support the jury's finding that appellant had been previously convicted of burglary of a building, cause number 3617 in the District Court of Llano County, Texas. This particular conviction was offered for enhancement purposes. The manner in which points of error six and seven are set out makes them multifarious and for that reason alone, they could be overruled. In the interest of justice, however, each contention will be addressed.

██ Concerning cause number 5400 in the 118th District Court of Howard County, appellant contends that the conviction was

---

5. *See* Act of June 18, 1965, ch. 722, sec. 1, 1965 Tex.Gen.Laws 317, 462–63, *as amended by* Act of June 14, 1973, ch. 399, sec. 2, 1973 Tex.Gen. Laws 883, 971–72, *amended by* Act of June 14, 1985, ch. 685, sec. 8(b), 1985 Tex.Gen.Laws 2472, 2473.

void because there was a fundamental defect in that the indictment did not contain an allegation that the building was not "then and there open to the public." However, in *Waller v. State*, 648 S.W.2d 308, 310 (Tex.Crim.App.1983) (opinion on reh'g), the Texas Court of Criminal Appeals held that the absence of such an averment does not render an indictment fundamentally defective. This contention is overruled.

■ Concerning cause number 11,855, a misdemeanor conviction for assault in Hood County, appellant contends that there was no proof that Jan Cain, the deputy clerk, was the custodian of the files. *See* former TEX.REV.CIV.STAT.ANN. art. 3731a, sec. 4 (text currently found in explanatory notes, p. 62, Vernon Supp.1987).[6] In *Speights v. State*, 499 S.W.2d 119, 122 (Tex.Crim.App.1973), it was held that in a case involving a copy of an official writing from a public office of the State, no certification is needed to show that the attending officer has legal custody of the writing. Here as in *Speights* the document states that it is certified by the county clerk to be true and correct. It is signed "Anjanette Ables, County Clerk, Hood County, Texas," by "Jan Cain, Deputy". We find that the certification was not needed. *See id.* This contention is overruled.

■ Also concerning cause number 11,-855, appellant contends that the judgment was not entered in accordance with the 1981 version of articles 42.01 and 42.02 of the Code of Criminal Procedure [7] because the judgment and the sentence were not contained on one single document. We do not read these two articles as requiring the judgment and sentence to be contained in one document. Further, even if this was a requirement, the judgment would be only voidable, correctable by nunc pro tunc entry in the trial court or by reformation on appeal. *See Aguilar v. State*, 658 S.W.2d 802, 806 (Tex.App.—Dallas 1983); *rev'd on other grounds*, 715 S.W.2d 645 (Tex.Crim.

App.1986); *Gray v. State*, 628 S.W.2d 228, 233 (Tex.App.—Corpus Christi 1982, pet. ref'd). Such error may not be raised in a collateral attack. *Cf. Aguilar*, 658 S.W.2d at 806 (error in recital of date of an offense after date of conviction and judgment used for enhancement does not make judgment void). *See also Preston v. State*, 667 S.W.2d 331, 333 (Tex.App.—Corpus Christi 1984, no pet.).

■ Appellant next argues that the New Mexico "pen packet" containing the record of conviction in cause number 4571 was not properly certified in accordance with former TEX.REV.CIV.STAT.ANN. art. 3731a, sec. 4. Appellant asserts that because the photograph and fingerprint card originally came from the New Mexico State Police, certification by them and not the Central Records Unit is needed. Appellant contends that it is unclear what facts were available to Charlene Tsoodle-Marcus, the custodian at the Central Records Unit, so that her determination that the Hershel Love fingerprinted and pictured in cause number 4571 in the District Court of Lea County, New Mexico is the same Hershel Love convicted in that cause is suspect.

We find that the New Mexico "pen packet" was properly certified under section 4 of article 3731a. *See id.* The photograph and fingerprint card were accompanied by Charlene Tsoodle-Marcus' certification that she is supervisor and legal custodian of the records at the Central Records Unit and that they are true and correct copies. Clara Jones, the New Mexico Secretary of State, certified that Charlene Tsoodle-Marcus is the custodian of the documents. We find no requirement in article 3731a, section 4 that the custodian explain the method of obtaining the records. *See id.* This contention is overruled.

■ Appellant's next complaint refers to State's Exhibit No. 12, the "pen packet" from the Texas Department of Corrections

---

**6.** *See* Act of June 21, 1951, ch. 471, 1951 Tex. Gen.Laws 830, 831, *as amended by* Act of May 20, 1975, ch. 280, sec. 1, 1975 Tex.Gen.Laws 666, 667, *repealed by* Order of the Court of Criminal Appeals, 701–702 S.W.2d XXIX, LXVII (effective Sept. 1, 1986).

**7.** *See* Act of June 18, 1965, ch. 722, sec. 1, 1965 Tex.Gen.Laws 317, 484–85, *as amended by* Act of June 8, 1981, ch. 291, secs. 111–12, 1981 Tex. Gen.Laws 761, 809.

containing the records of conviction in causes numbered 2401, 3518, 5399, 5400, and 3617. Appellant contends that the identification for cause number 2401 is suspect because the fingerprint card incorporated into this pen packet fails to indicate that it was received from Gillespie County from which comes the record of conviction in cause number 2401.

The pen packet in question begins with a Certificate of Due Attestation signed by the Record Clerk of the Texas Department of Corrections. This certificate identifies appellant by his name and T.D.C. number 258578 and lists the commitments found in the records for the person with that name and T.D.C. number, including cause number 2401. The fingerprint card included in the pen packet also identifies the appellant by name and T.D.C. number 258578. This fingerprint card applies to each commitment in the packet. Appellant cites no authority for the contention that a separate fingerprint card is necessary for each commitment in the packet. This contention is overruled.

■ Appellant also contends that the identification for cause number 2401 is suspect because one part of Exhibit No. 12 reflects that appellant was received at the Texas Department of Corrections to begin serving a 14–year sentence on June 4, 1976 and the Gillespie County commitment reflects that the defendant in cause number 2401 had been incarcerated in the Gillespie County Jail since June 29, 1976. The paragraph in the record of commitment referring to appellant's "incarceration" in the Gillespie County Jail from June 29, 1976 is clearly for the purpose of crediting appellant with time served and not necessarily to determine the whereabouts of appellant on any particular date. This court sees no reason to suspect appellant's identification with cause number 2401 included in the Texas Department of Corrections pen packet. The contention is overruled.

In his last two contentions under points of error six and seven appellant complains

that the State failed to lay the proper predicate for introduction of Exhibit 12 as an official record and that the Certificate of Due Attestation provided with the pen packet is improperly worded. Specifically, appellant argues that the State failed to show the pen packet marked Exhibit No. 12 was made by an authorized person "in the performance of the functions of his office and employment" as required by former TEX.REV.CIV.STAT.ANN. art. 3731a, sec. 1 (text currently found in explanatory notes, p. 61, Vernon Supp.1987).[8]

Former TEX.REV.CIV.STAT.ANN. art. 3731a, sec. 1 provided:

Any written instrument, certificate, record, part of record, return, report, or part of report, made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision, in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein, subject to the provisions in Section 3.

*Id.*

■ Appellant cites *Stephensen v. Perry,* 590 S.W.2d 558 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) as authority for this contention. This case can be distinguished from the present case because in *Stephensen* it appeared from the face of the record that the instruments in question were made by private individuals and merely recorded by the county clerk. *Id.,* at 559. In addition, appellant cites *Hartman v. Harder,* 322 S.W.2d 555 (Tex. Civ.App.—Amarillo 1959, no writ). This case can also be distinguished. The *Hartman* case concerned a blood-alcohol test analysis. The Amarillo Court of Appeals found the analysis inadmissible as an official record because there was no showing on the record that either the records custodian who certified the report or the laboratory manager who made it were special-

---

8. *See* Act of June 21, 1951, ch. 471, 1951 Tex. Gen.Laws 830, 830–31, *as amended by* Act of June 16, 1961, ch. 321, sec. 1, 1961 Tex.Gen. Laws 685, 685, *repealed by* Order of the Court of Criminal Appeals, 701–702 S.W.2d XXIX, LXVII (effective Sept. 1, 1986).

ists qualified to determine the percentages of alcohol in a sample of blood. *Id.*, at 558.

The present case deals with records of conviction properly certified by the Record Clerk of the Texas Department of Corrections. Records showing the judgments and sentences rendered in prior convictions are self-proving under art. 3731a. *See Spencer v. State*, 164 Tex.Cr.R. 464, 300 S.W.2d 950, 952 (1957). In addition, the record affirmatively shows that the Record Clerk's certification is proper. It is well settled that certification by a district clerk of a county of this State is itself sufficient to make records of prior convictions admissible for the truth of the matters asserted by them. *See Todd v. State*, 598 S.W.2d 286, 292 (Tex.Crim.App.1980).

■ Appellant's contention that the Certificate of Due Attestation is defectively worded is unfounded. The certificate clearly identifies the appellant as the person to whom the accompanying records of convictions relate. Furthermore, even without proper certification, the records are admissible because they are self-proving. *See Spencer*, 300 S.W.2d at 952.

Finally, appellant complains that the evidence is insufficient to support the jury's finding that he had been previously convicted of the felony in cause number 3617 in Llano County, the enhancement conviction. Appellant's only argument supporting this contention is found in his objections to the pen packet from the Texas Department of Corrections (Exhibit 12). In light of our decision that these objections have no merit, we hold that the evidence supporting this jury finding is sufficient. Appellant's points of error six and seven are overruled.

In his eighth point of error appellant contends that the trial court erred in failing to charge or instruct the jury about the following matters with regard to the guilt or innocence of the appellant:

(a) that they must find the offense occurred prior to September 1, 1983;

(b) the lesser included offense of sexual abuse;

(c) the definition or meaning of the term "reasonable doubt" as used in the charge.

■ As to appellant's first contention concerning the trial court's refusal to charge the jury that they must find that the offense occurred before September 1, 1983, appellant argues that this is necessary because on September 1, the statute under which he is convicted was repealed. However, we find that any possible error of the court in failing to include this in the charge was harmless error because the only evidence in the record was that the offense took place August 29, 1983, as alleged in the indictment. This contention is overruled.

■ Appellant next argues that the trial court should have charged the jury on the lesser included offense of sexual abuse. *See* former TEX.PENAL CODE ANN. sec. 21.04 (Vernon 1974). Appellant contends that "where an aggravated offense differs from lesser included offenses ... only by reason of the defendant's intent, the court should charge on the lesser offenses because of the varying inferences which might be drawn from the actus reus."

We find that the difference between aggravated sexual abuse and sexual abuse does not involve intent. The intent required for both sexual assault and aggravated sexual assault is "to arouse or gratify the sexual desire of any person". *See id.;* former TEX.PENAL CODE ANN. sec. 21.05. The difference, instead, pertains to what caused the victim to submit to the assailant's demands. In an aggravated sexual abuse case, the State must show acts, words, or deeds of the defendant by which he threatened or placed the victim in fear of death, serious bodily injury or kidnapping to be inflicted on anyone. *See* former TEX.PENAL CODE ANN. sec. 21.-05. This factor has no bearing on the actor's intent.

In determining whether a charge on a lesser included offense is required, a two-step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is not guilty of the

alleged offense but is guilty only of the lesser included offense. *See Salinas v. State*, 644 S.W.2d 744, 745 (Tex.Crim.App. 1983). It is clear that the crime of sexual abuse is included within the proof necessary to establish the offense charged. *See id.* We need only look for some evidence in the record that if appellant was guilty it was only of the lesser offense.

■ At trial, D— C— testified that "[h]e told me he was going to kill me and I figured he would have." We find no evidence in the record, and appellant points to none, to show that the victims in this case submitted to the intruder's demands for any reason other than the intruder's acts and words by which he threatened and placed his victims in fear of death or serious bodily injury. Based on the testimony of record, the jury could find appellant guilty of the aggravating factor, or nothing at all. As such, there is no evidence to support appellant's claim that if he was guilty, it was only of sexual assault. Appellant was not entitled to an instruction to the lesser included offense. *See id.* This contention is overruled.

■ Appellant next argues that the trial court erred in failing to instruct the jury concerning the definition of the term "reasonable doubt". However, it has been held that the trial court is not required to define the term "reasonable doubt" in the charge. *See Patterson v. State*, 458 S.W.2d 658, 661 (Tex.Crim.App.1970) (opinion on reh'g). Appellant cites *Young v. State*, 648 S.W.2d 2 (Tex.Crim.App.1983), in support of his proposition. However, if anything, *Young* stands for the proposition that this term should *not* be defined. *See id.*, at 3. Appellant's contention and his eighth point of error are overruled.

■ In his ninth point of error appellant contends that the trial court erred in submitting to the jury in the charge, disjunctive theories of the manner and means of commission of the offense, at variance with the conjunctive allegations of the indictment. We find no error in the trial court's actions because the Court of Criminal Appeals has held that it is not error for an indictment to allege different ways of committing an offense in the conjunctive and for the jury to be charged disjunctively. *See Vaughn v. State*, 634 S.W.2d 310, 312 (Tex.Crim.App.1982). Proof of any of the ways alleged in the indictment is sufficient absent an objection to the charge based on insufficient evidence or a motion to force the State to elect. *See Pinkerton v. State*, 660 S.W.2d ₒ58, 62 (Tex.Crim.App.1983); *Espinoza v. State*, 638 S.W.2d 479, 480–81 (Tex.Crim. App.1982). Appellant did not object to the charge based on insufficiency, nor did he move to force the State to elect.

■ In conjunction with this point of error, appellant contends, in his now nineteenth point of error, that there was insufficient evidence to support the verdict. Apparently appellant is contending that when the State alleged several means of committing the offense in the conjunctive, they have the burden to prove each and every one of the means. Therefore, appellant is contending that there is not sufficient evidence of each and every means alleged. The charge required the jury to find either: 1) that appellant threatened to cause death to D— C—; or 2) that appellant placed D— C— in fear of death. We find that, as we stated above, it was not necessary for the State to prove each and every theory alleged. Proof of any of the ways alleged is sufficient. There was sufficient evidence to support the judgment in that D— C—'s testimony shows that she was told by appellant that he would kill her. Appellant's ninth and nineteenth points of error are overruled.

In his tenth and eleventh points of error, appellant contends that the trial court erred in denying appellant's motion for continuance. Appellant moved for continuance in order to obtain the testimony of a witness. Appellant also asserts that the trial court erred in admitting testimony concerning an oral incriminating statement allegedly made by him while under arrest, which surprised him because it was not timely revealed pursuant to an order for pre-trial discovery. We will address this latter contention first.

Prior to trial, appellant sought and was granted discovery of "[a]ny and all written or recorded or oral statements or confessions made by the defendant to investigating officers, agents, or to third parties, or copies thereof within the possession, custody or control of the prosecution, the existence of which is known or by exercise of due diligence may become known to any attorney for the prosecution." On the second day of trial, the prosecutor first advised appellant's counsel that later that day he intended to call Deputy Sheriff Cloud as a witness to testify concerning an incriminating oral statement allegedly made by appellant to a third party, Danny Floyd. The trial court overruled appellant's objections to this testimony and further refused any continuance to appellant so that he could attempt to contact the third party or secure his testimony concerning the conversation supposedly overheard by the deputy.

The record shows that the State attempted to introduce another incriminating statement made by appellant to a police officer but it was excluded. At that point, the State contends in its brief, it was forced to offer evidence of the appellant's statement made to Danny Floyd and overheard by Deputy Cloud. Appellant is asserting that because the State knew of this incriminating statement, it should have been disclosed, and its nondisclosure was a violation of the court's discovery order, thereby requiring exclusion of the statement at trial.

 We find that the discovery order which was granted by the trial court placed too great of a burden on the State. While it is true that where the trial court grants a motion for discovery and the prosecutor fails to disclose evidence ordered discoverable, then the evidence should be excluded, *Lindley v. State*, 635 S.W.2d 541, 543 (Tex.Crim.App.1982), the order in the present case was overbroad in that it required that State to produce "[a]ny and all written or recorded or oral statements or confessions made by the Defendant...." The motion and order lacked the specificity required of such motions. *See id.* (wherein a very similar motion was held to be ambig-

uous and insufficient on appeal). This contention is overruled.

 Concerning his tenth point of error, appellant is asserting that the trial court erred in overruling his motion for continuance made during trial. *See* TEX. CODE CRIM.PROC.ANN. art. 29.13 (Vernon 1966). He asserts that he was unable, because of this, to obtain the testimony of a material witness, Danny Floyd, appellant's cell mate. However, appellant has not filed a motion for new trial or affidavit of the absent witness' testimony. *See Varela v. State*, 561 S.W.2d 186, 191 (Tex. Crim.App.1978). Therefore, the failure of the trial court to grant appellant's motion for continuance was not error. *See id.* Appellant's tenth and eleventh points of error are overruled.

In his twelfth point of error, appellant contends that the trial court erred in refusing to permit appellant to testify outside the presence of the jury for the limited purpose of showing the invalidity of prior judgments of conviction introduced into evidence by the State. Appellant argues that he sought to take the stand to testify concerning the invalidity of two prior convictions. He did not wish to be questioned concerning any other conviction. Appellant argues that it is fundamentally unfair to require a defendant to waive his right to require proof of a prior conviction beyond a reasonable doubt.

 Appellant does not cite any authority and we find none for the proposition that he can take the stand for this limited purpose. When a defendant takes the stand as a witness, he is subject to the same rules of evidence as any other witness and may be contradicted, impeached and cross-examined as any other witness, except where statute forbids certain matters to be used against him. *See Valerio v. State*, 494 S.W.2d 892 (Tex.Crim.App. 1973); *Black v. State*, 440 S.W.2d 668 (Tex. Crim.App.1969).

 In any event, we find that appellant has shown no harm since no bill of exceptions was perfected to determine what appellant's testimony would have

been had he been allowed to testify. *See Ross v. State*, 523 S.W.2d 402, 404 (Tex. Crim.App.1975). Appellant's twelfth point of error is overruled.

In his thirteenth point of error, appellant contends that the trial court erred in permitting testimony concerning an extraneous theft or burglary not shown to involve appellant or to be connected to the offense being tried. Appellant refers to testimony from Oleta Nichols that someone had entered the back rooms of the house and had disturbed the contents of her meat freezer during the same evening that the crime charged took place.

■ It is a fundamental principle of law that an accused is entitled to be tried on the accusation made in the State's pleading and not for some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App. 1983). Therefore, the State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). The reason for this rule is that although the evidence has some legal relevance to the general issue of whether the accused committed the act charged, it is inadmissible because it is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). *See also Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983).

■ This evidence may, however, under some circumstances, become admissible; where an offense is one continuous transaction, or, another offense is closely interwoven with the case at trial, the jury has a right to hear all the facts surrounding the event so that they may realistically evaluate the evidence. *See Archer v. State*, 607 S.W.2d 539, 542 (Tex.Crim.App. 1980), *cert. denied*, 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981). The admissibility of facts surrounding the crime charged is within the sound discretion of

the judge and will not be disturbed on appeal unless a clear abuse of discretion is shown. *See Burgett v. State*, 646 S.W.2d 615, 618 (Tex.App.—Fort Worth 1983, pet. ref'd).

■ In the present case, the back rooms of Oleta Nichols' house had been entered and the meat freezer disturbed the same evening that the sexual assault was committed. A window from the back part of the house looks directly to the table where the five victims played dominoes. The trial judge did not abuse his discretion in determining that these facts were so interwoven with the crime charged as to be properly admitted. Appellant's thirteenth point of error is overruled.

■ Appellant's fourteenth point of error concerns the trial court's failure to give an instruction limiting the purposes for which evidence of extraneous offenses may be considered. The Texas Court of Criminal Appeals has held that it is not necessary to give a limiting instruction on an extraneous offense admitted as part of a transaction which includes the offense on trial. *See Archer*, 607 S.W.2d at 542; *Luck v. State*, 588 S.W.2d 371, 376 (Tex. Crim.App.1979) (opinion on reh'g), *cert. denied*, 446 U.S. 944, 100 S.Ct. 2171, 64 L.Ed.2d 799 (1980); *King v. State*, 553 S.W.2d 105, 106 (Tex.Crim.App.1977). Appellant's fourteenth point of error is overruled.

In his next two points of error, appellant complains of the court's failure to give an admonitory instruction to the jury at the punishment stage of the trial about the consideration of evidence outside the record and of the lack of clarity in the court's charge as to the applicable law and the task of the jury. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 3(b) (Vernon 1981). Appellant offered suggestions to improve the charge's grammar and punctuation which the court chose not to follow.

■ These contentions are without merit. The giving of admonitory charges by the trial court to guard against jury misconduct has been left largely to the trial

court's discretion. *See Hernandez v. State*, 169 Tex.Cr.R. 418, 334 S.W.2d 299, 301–02 (1960). This rule includes a charge as to matters not in evidence. *See id.* Appellant is not entitled to have the court's charge worded exactly as he dictates. The trial court, in this case, admonished the jury that, "[y]ou can only consider facts and circumstances in evidence, and you must not consider or receive from any source facts or circumstances that have not been introduced by testimony before you." This wording of the instruction requested is sufficient. Furthermore, appellant fails to show how any lack of clarity in the charge, if it exists, has prejudiced him. Points of error fifteen and sixteen are overruled.

In appellant's seventeenth point of error he contends that the trial court erred in permitting the State to make reference to a prior out-of-court identification of the appellant by the victim at a time when appellant was neither represented by nor had waived his right to counsel, for the purpose of bolstering the victim's in-court identification of him.

 It is true that an attempt to bolster the complaining witness' in-court identification with testimony of a live pretrial lineup at which the defendant's right to counsel was violated is reversible error. *See Barnhill v. State*, 657 S.W.2d 131, 133 (Tex.Crim.App.1983). The testimony appellant complains of, however, makes no reference to a live pre-trial lineup. The witness was asked:

Q. [MR. GRISSOM (Prosecutor):] Now, Ms. [C__], I was questioning you about an event that occurred some six or seven days after the event. And I want to ask you whether or not you had the occasion on that day to see this Defendant?

A. Yes.

Q. Now, before you saw this Defendant did anybody tell you that he was a suspect in this case or that he had been arrested in connection with this case or anything else about this individual?

A. No.

Moreover, in a discussion outside the jury's hearing and immediately prior to this line of questioning appellant's attorney was told what questions would be asked of the witness and the court instructed the witness not to mention any lineup. Appellant agreed to allow the questions and, thereby, failed to preserve error. Appellant's seventeenth point of error is overruled.

Appellant next contends that the evidence was insufficient to show beyond a reasonable doubt that he was the person who committed the crime; therefore, the court erred in overruling his motion for instructed verdict.

 In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Id.*

The record in this case contains sufficient evidence by which the jury could determine, beyond a reasonable doubt, that the appellant was the perpetrator of the crime. One of the victims, Oleta Nichols, described her assailant as:

[A] man of about five foot nine with brown hair and brown eyes with a well-trimmed moustache with a black cap on that had caterpillar yellow lettering on it

I never could read. Had on Wrangler blue jeans, white tennis shoes without a shirt. He had a tattoo down this arm (indicating) a tattoo down here. He had a tattoo above his right breast. And he had a scar on his stomach.

At one point during the trial the appellant was asked to remove his shirt so the jury could view his unique body markings. For the record, the prosecutor noted that:

[MR. GRISSOM:] [T]he Defendant is standing in front of the jury and that his body markings consist of the tattoo of a butterfly on his upper right breast, a scar on his stomach, a tattoo on the upper left arm, a tattoo on the lower left arm, and that this Defendant is approximately five feet nine inches tall. He has brown hair and a dark complexion.

In light of this evidence, the appellant was not entitled to an instructed verdict. Appellant's eighteenth point of error is overruled.

In his twentieth point of error, appellant contends it was error to allow the investigating officer to testify as to the victims' descriptions of their assailant given to the officer at the time of the incident. Appellant first asserts that the officer's testimony was inadmissible hearsay mandating reversal. *See Hayter v. State,* 541 S.W.2d 435, 435 (Tex.Crim.App.1976). *See also Salas v. State,* 403 S.W.2d 440, 440 (Tex.Crim. App.1966). Appellant complains that by allowing the officer's testimony, the State was impermissibly permitted to bolster the victims' testimony. *See Ballew v. State,* 161 Tex.Cr.R. 579, 279 S.W.2d 336 (1955).

At trial, State's witness, Oleta Nichols, testified as to her assailant's description and appearance, including his unique body markings. She also testified that, on the day following the incident, Officer Stanley showed her a xeroxed copy of a photo lineup from which she identified appellant as her assailant. On cross-examination, appellant's attorney showed that, in the first trial of this cause, Nichols misidentified a second photo lineup put together a few days after the incident as the original photo lineup from which she identified appellant only one day after the incident.

The State's next witness, Officer Mike Stanley, testified that he had, in fact, made a second photo lineup for use in another investigation. The pictures for the second lineup were not taken until two days after the victims had identified appellant from the original photo lineup. In preparing this case for the grand jury, Stanley accidently substituted the second photo lineup for the first. The error was not discovered until just before the second trial of this cause began. The second photo lineup was used throughout the first trial and was improperly identified by the victims as the lineup from which they identified appellant.

Later, D__ C__ gave her testimony as to her assailant's description. On cross-examination, appellant's attorney showed that the photo identified by the witness during the first trial as the photo from which she identified her attacker on the day following the crime was not even taken until two days after that identification was made.

■■■ The general rule is that third party testimony of an extra-judicial identification by a complainant is not admissible to support that complainant's own identification testimony. *See Sledge v. State,* 686 S.W.2d 127, 129 (Tex.Crim.App.1984). An exception to the rule exists, however, where the defendant impeaches or attempts to impeach the testimony of the identifying witness. *See Roney v. State,* 632 S.W.2d 598, 600 (Tex.Crim.App.1982). As long as the attempt to impeach is of a "sufficient degree", third party testimony as to the victim's out-of-court identification is admissible. *See id.,* at 601. Furthermore, the attempt to impeach the witness' identification testimony need not occur prior to admitting the third party's corroborating testimony. *See id.; Davis v. State,* 709 S.W.2d 288, 290 (Tex.App.—Corpus Christi 1986, pet. ref'd).

■■ In the present case, appellant's attorney attempted to impeach the victims' identification testimony by calling into question their ability to accurately identify the photo from which they identified the appellant only one day after the incident occurred. We consider this an attempt to

impeach of sufficient degree to authorize admission of the corroborating testimony. Appellant's twentieth point of error is overruled.

 In his final point of error, appellant contends that the trial court erred in failing to grant his motion for mistrial grounded on two separate questions made to State's witness, Officer Michael Stanley. The first question concerning a copy of a photo lineup which included appellant's photograph was asked as follows:

Q. [MR GRISSOM:] All right. I'm going to show you a document marked as Defendant's Exhibit 3, and ask you whether or not you can recall if you made the original Xerox which is represented by that document?

A. Yes, sir.

Q. And when did you do that?

A. September the 9th.

Q. And why did you do that?

A. For Johnson County Sheriff's Office.

Q. All right. And why for Johnson County Sheriff's Office?

A. Okay. Two days after—either the 30th or the 31st of August we received a teletype, a regional teletype that went out to most Sheriff's Offices and police departments in the surrounding area, they had a rape—

Appellant objected to the State's question, the answer to which contained a reference to an extraneous offense. The objection was sustained. Appellant then urged the court to declare a mistrial because an instruction to disregard the statement would not cure its prejudicial effect. The court denied the motion for mistrial and instructed the jury to disregard the question and answer.

The second question was asked as follows:

Q. ... Following the time that this Defendant was arrested and was incarcerated in the Hood County Jail did you have the occasion to talk to him or attempt to get information about the ring that had been taken?

Appellant made an objection which was sustained. The court did not allow an answer. The court, out of the jury's presence, suggested an alternative wording of the question which did not imply that appellant had knowledge of the stolen ring. The court instructed the jury to disregard the prosecutor's improper question but denied appellant's motion for mistrial.

In *Carey v. State*, 537 S.W.2d 757 (Tex. Crim.App.1976), the prosecutor asked an improper question which suggested the defendant was involved in an extraneous offense. The record reflected that the defendant's objection was sustained but his motion for mistrial was overruled. The Court of Criminal Appeals held that the reference to an extraneous offense was not so harmful that it could not be cured by the court's instruction to disregard. *See id.*, at 759; *see also Bolden v. State*, 504 S.W.2d 418 (Tex.Crim.App.1974); *White v. State*, 444 S.W.2d 921 (Tex.Crim.App.1969).

In the present case, each improper question was followed by an instruction to the jury to disregard the question. We do not find the questions complained of so clearly calculated to inflame the minds of the jury as to prevent the possibility of cure by instruction. Appellant's twenty-first point of error is overruled.

The judgment of the trial court is affirmed.